# EXHIBIT A



## ALLIED WORLD NATIONAL ASSURANCE COMPANY
225 Franklin Street, Boston, MA 02110 · Tel. (857) 288-6000 · Fax (617) 556-8060

# EXECUTIVE FORCEFIELD™

## SIDE 'A' DIRECTORS & OFFICERS EXCESS AND
## LEAD DIFFERENCE-IN-CONDITIONS ("DIC") INSURANCE POLICY

**POLICY NUMBER: 0305-5616**
**RENEWAL OF:** 0305-5616

**NOTICE: EXCEPT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE AFFORDED BY THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED PERSONS DURING THE POLICY PERIOD OR THE DISCOVERY PERIOD IF APPLICABLE, AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE BROKER.**

**NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY THE PAYMENT OF DEFENSE COSTS.**

**NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND.**

## DECLARATIONS

**ITEM 1:** COMPANY: Exide Technologies

ADDRESS:   13000 Deerfield Parkway, Building 200
Milton, GA 30004

**ITEM 2:** POLICY PERIOD:  From: May 5, 2012 To: May 5, 2013
(12:01 a.m. Standard Time at the address stated in Item 1)

**ITEM 3:** LIMIT OF LIABILITY:                    $10,000,000
aggregate for all coverages combined (including Defense Costs)

EXCESS OF TOTAL
UNDERLYING LIMITS OF:              $50,000,000

**ITEM 4:** REINSTATED LIMIT OF LIABILITY:    $10,000,000
aggregate for all Loss under this policy, including Defense Costs

**ITEM 5:** SCHEDULE OF PRIMARY AND UNDERLYING EXCESS POLICIES:

Followed Policy:

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| Federal Insurance Company | 8223-7519 | $10,000,000 | May 5, 2012 to May 5, 2013 |

Underlying Policy(ies):

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| Zurich American Insurance Company | DOC-9485388-01 | $10,000,000 | May 5, 2012 to May 5, 2013 |
| Travelers Casualty and Surety Company of America | 105610441 | $10,000,000 | May 5, 2012 to May 5, 2013 |
| AXIS Insurance Company | MAN739296/01/2012 | $10,000,000 | May 5, 2012 to May 5, 2013 |
| Continental Casualty Company | 425374401 | $10,000,000 | May 5, 2012 to May 5, 2013 |

**ITEM 6:**     PREMIUM:                              $50,000

**ITEM 7:**     ADDRESS OF INSURER FOR NOTICES UNDER THIS POLICY:

    A.  <u>Claim-Related Notices:</u>

        E-mail: AWACUS.FinancialClaims@awac.com
        Fax:     860.284.1307

        ALLIED WORLD NATIONAL ASSURANCE COMPANY
        ATTN: CLAIMS DEPARTMENT
        9 FARM SPRINGS ROAD
        FARMINGTON, CT 06032

    B.  <u>All Other Notices:</u>

        ALLIED WORLD NATIONAL ASSURANCE COMPANY
        ATTN: PROFESSIONAL LIABILITY UNDERWRITING
        199 WATER STREET
        NEW YORK, NY 10038

**In Witness Whereof,** the Insurer has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

President                                                         Asst. Secretary

**AUTHORIZED REPRESENTATIVE**

Endorsement No.: 1
This endorsement, effective: May 5, 2012
(at 12:01 a.m. Standard Time at the address of the Company as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0305-5616
Issued to: Exide Technologies
By: Allied World National Assurance Company

## GEORGIA AMENDATORY ENDORSEMENT

This endorsement modifies insurance coverage provided under the SIDE 'A' DIRECTORS & OFFICERS EXCESS AND LEAD DIFFERENCE-IN-CONDITIONS ("DIC") INSURANCE POLICY.

It is understood and agreed that the following Clauses are added to the policy:

**NONRENEWAL**

If the **Insurer** decides not to renew this policy, the **Insurer** will mail or deliver written notice of nonrenewal stating the reason for nonrenewal to the **Company** at the address set forth in the Declarations at least forty-five (45) days before the expiration date of the policy. Proof of mailing of any notice shall be sufficient proof of notice.

**RENEWAL ON ALTERED TERMS**

If the **Insurer** decides to increase the current policy premium by more than 15% (other than any increase due to a change in risk, exposure, experience modification or resulting from an audit) or changes any policy condition which would limit or restrict coverage, the **Insurer** will deliver or mail by first class mail to the **Company** at the address set forth in the Declarations written notice advising of the **Insurer's** action, which will include the amount of premium increase, if any, at least forty-five (45) days before the expiration date of the policy. Proof of mailing of any notice shall be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

Endorsement No.: 2
This endorsement, effective: May 5, 2012
(at 12:01 a.m. Standard Time at the address as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0305-5616
Issued to: Exide Technologies
By: Allied World National Assurance Company

## PENDING OR PRIOR LITIGATION EXCLUSION
### (Litigation or Proceedings involving Insured Persons)

It is understood and agreed that Clause 4, EXCLUSIONS, is amended by adding the following exclusion:

This policy shall not cover any **Loss** in connection with that portion of any **Claim** made against an **Insured Person** alleging, arising out of, based upon, or attributable to, or in consequence of any pending and/or prior civil or criminal litigation or administrative or regulatory proceeding involving any **Insured Person** and of which such **Insured Person** had notice as of the **Pending or Prior Date** set forth below, and any matters arising out of such pending and/or prior litigation or proceeding or any fact, circumstance or situation underlying or alleged in such litigation or proceeding.

**Pending or Prior Date:** May 1, 2008

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

DO 00222 00 (06/09)

Endorsement No.: 3
This endorsement, effective: May 5, 2012
(at 12:01 a.m. Standard Time at the address of the Company as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0305-5616
Issued to: Exide Technologies
By: Allied World National Assurance Company

## STATE AMENDATORY INCONSISTENCY

It is understood and agreed that in the event that there is an inconsistency between a state amendatory attached to this policy and any other term or condition of this policy, then where permitted by law, the **Insurer** shall apply those terms and conditions of either the amendatory or the policy which are more favorable to the **Insured Person(s).**

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

Endorsement No.: 4

This endorsement, effective: May 5, 2012

(at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)

Forms a part of Policy No.: 0305-5616

Issued to: Exide Technologies

By: Allied World National Assurance Company


### AMEND DEFINITION OF APPLICATION
### (Materials for Current Policy Only)

It is understood and agreed that Clause 3, DEFINITIONS, is amended by deleting Definition C. (a), **"Application"**, in its entirety and replacing it with the following:

(a)     **"Application"** means: (i) the signed application submitted for this policy, including any attachments and other materials submitted with or incorporated into such application; and (ii) any publicly available documents filed by the **Company** with the U.S. Securities and Exchange Commission ("SEC") during the twelve (12) months prior to the inception of the **Policy Period**. All of these materials shall be deemed attached hereto, as if physically attached hereto, and incorporated herein.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.


_____

**AUTHORIZED REPRESENTATIVE**

Endorsement No.: 5
This endorsement, effective: May 5, 2012
(at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0305-5616
Issued to: Exide Technologies
By: Allied World National Assurance Company

## AMEND DEFINITION OF INDEPENDENT DIRECTOR
### (Add Three Year Exception)

It is understood and agreed that Clause 3, DEFINITIONS, is amended by deleting Definition C. (f), **"Independent Director(s)"**, in its entirety and replaced it with the following:

    (f)    **"Independent Director(s)"** means any past, present or future director or **Manager** of the **Company** who (i) is not, and never has been, an executive officer or employee of any **Company**; or (ii) has not been an executive officer or employee of any **Company** in the past three years.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

DO 00180 00 (06/09)

Endorsement No.: 6
This endorsement, effective: May 5, 2012
(at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0305-5616
Issued to: Exide Technologies
By: Allied World National Assurance Company

## AMEND DEFINITION OF CLAIM
### (Informal Civil Investigation of Insured Person)

It is understood and agreed that Clause 3, DEFINITIONS, is amended by adding the following to Definition B. (a), **"Claim"**:

      "**Claim**" shall also mean an informal civil investigation of any **Insured Person.**

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
       **AUTHORIZED REPRESENTATIVE**

Endorsement No.: 7
This endorsement, effective: May 5, 2012
(at 12:01 a.m. Standard Time at the address of the Company as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0305-5616
Issued to: Exide Technologies
By: Allied World National Assurance Company

## AMEND NOTICE PROVISIONS
### (90-Day Post Policy Reporting)

It is understood and agreed that Clause 6, NOTICE PROVISIONS, is amended by deleting the second paragraph thereof and replacing it with the following:

> The **Company** or an **Insured Person** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of a **Claim** made against an **Insured Person** as soon as practicable after the general counsel or risk manager (or individuals with equivalent responsibilities) of the entity identified in Item 1 of the Declarations becomes aware of the **Claim**. In no event shall such notice be provided later than ninety (90) days after the end of the **Policy Period** (or Discovery Period if applicable).

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

# POLICYHOLDER DISCLOSURE STATEMENT
## UNDER THE
## TERRORISM RISK INSURANCE ACT

The Insured is hereby notified that under the federal Terrorism Risk Insurance Act, as amended, (the "Act"), the Insured has a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property; or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. The Insured should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism covered by the Act is final and not subject to review.

Coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government will generally pay 85% of terrorism losses exceeding a statutorily established deductible that must be met by the Insurer, and which deductible is based on a percentage of the Insurer's direct earned premiums for the year preceding the Act of Terrorism.

Be advised that there is a $100 billion cap on all losses resulting from Acts of Terrorism. If aggregate insured losses attributable to Acts of Terrorism exceed $100 billion in a Program Year (January 1 through December 31), the United States Government shall not make any payment for any portion of the amount of such loss that exceeds $100 billion. If aggregate insured losses attributable to Acts of Terrorism exceed $100 billion in a Program Year and the Insurer has met its deductible under the Act, the Insurer shall not be liable for payment of any portion of the losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Coverage for "insured losses" as defined in the Act is subject to the coverage terms, conditions, amounts and limits in this policy applicable to losses arising from events other than Acts of Terrorism.

The Insured should know that under federal law, the Insured is not required to purchase coverage for losses caused by Acts of Terrorism.

Please indicate the selection of the Insured below.

_____ The Insured hereby elects to purchase coverage in accordance with the Act for a premium of $0.00.

_____ The Insured hereby rejects coverage and accepts reinstatement of the exclusion in accordance with the Act.

_____    Exide Technologies
Signature of Insured

_____    0305-5616
Print/Title

_____
Date



## ALLIED WORLD NATIONAL ASSURANCE COMPANY
_____

# EXECUTIVE FORCEFIELD™
### SIDE 'A' DIRECTORS & OFFICERS EXCESS AND
### LEAD DIFFERENCE-IN-CONDITIONS ("DIC") INSURANCE POLICY
_____

In consideration of the payment of the premium and in reliance upon the **Application**, ALLIED WORLD NATIONAL ASSURANCE COMPANY, herein called the **"Insurer"**, agrees as follows:

## 1.      INSURING AGREEMENT

The **Insurer** shall pay on behalf of the **Insured Persons** the **Non-Indemnified Loss** incurred by the **Insured Persons** arising from any **Claim** first made during the **Policy Period** (or Discovery Period if applicable), and reported to the **Insurer** in accordance with the terms of this policy, against such **Insured Person** for any **Wrongful Act**.  Liability shall attach to the **Insurer** only after the limits of liability of the **Underlying Policies** have been exhausted by the payment of loss covered by the **Underlying Policies**.  However, if a **DIC Event** occurs, this policy will drop down and pay that portion of a **Non-Indemnified Loss** which is otherwise covered under this policy and which is not otherwise paid by any **Underlying Insurer**.

This policy provides coverage for **Insured Person(s)** only. Neither the **Company** nor any other entity is covered in any respect by this policy.

## 2.      FOLLOW FORM CLAUSE

This policy shall follow and be subject to the terms and conditions of the **Followed Policy** as in effect the first day of the **Policy Period**, except as otherwise specifically set forth in this policy.  This clause shall apply regardless of any subsequent rescission of the **Followed Policy**.

## 3.      DEFINITIONS

A.      Follow Form Definitions: Unless otherwise defined herein, any terms in this policy that appear in bold typeface shall have the same meaning as defined, if at all, in the **Followed Policy**.

B.      Enhancements to Certain Follow Form Definitions:

      (a)      **"Claim"** also means any:

            (i)      civil, criminal, administrative or regulatory investigation of an **Insured Person** by the SEC or any other authority in any jurisdiction, which is commenced by the filing or issuance of a notice of charges, a Wells Notice, a "target letter", a formal investigative order or any similar document identifying any **Insured Person** as a person against whom a formal proceeding may be commenced;

            (ii)      request or demand by a regulatory, administrative, governmental or similar authority to interview or depose an **Insured Person**, or for the production of documents by an **Insured Person**, in his or her capacity as such;

<div style="margin-left:2em">

(iii)      official request for **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

(iv)      written request to toll or waive the applicable statute of limitations or contractual time-bar relating to a potential **Claim** against an **Insured Person**;

for a **Wrongful Act**, except that the requirement set forth in the Insuring Agreement that a **Claim** allege a **Wrongful Act** by an **Insured Person** shall not apply to a **Claim** as described in item (ii) above.

</div>

(b)      **"Defense Costs"** also means reasonable and necessary fees, costs, charges or expenses incurred by an **Insured Person** in the investigation, defense or appeal of a **Claim**.

(c)      **"Loss"** also means the following amounts which an **Insured Person** is legally obligated to pay on account of a **Claim**:

<div style="margin-left:2em">

(i)      punitive, exemplary or the multiple portion of a multiplied damages award;

(ii)      civil or criminal fines or penalties imposed by law against an **Insured Person**;

(iii)      civil penalties assessed against an **Insured Person** pursuant to Section 308 of the Sarbanes-Oxley Act of 2002;

(iv)      civil penalties assessed against an **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. 78dd-2(g)(2)(B), or similar law in any other jurisdiction;

(v)      taxes imposed by law upon an **Insured Person** in his or her capacity as such because of the bankruptcy, receivership, conservatorship or liquidation of a **Company**; or

(vi)      **Defense Costs**.

</div>

The insurability of items (i), (ii), (iii), (iv) and (v) above shall be determined by the applicable law most favorable to the insurability of such damages, fines, penalties or taxes. If an **Insured Person** presents a written opinion from legal counsel stating that such damages, fines, penalties or taxes are insurable under such applicable law, the **Insurer** shall not challenge that determination.

The **Insurer** shall not assert that any **Loss** incurred by an **Insured Person** is uninsurable due to the **Insured Person's** actual or alleged violation of Section 11 or 12 of the Securities Act of 1933, as amended.

C.      Non-Follow Form and New Definitions:

(a)      **"Application"** means: (i) the signed application(s) submitted for this policy, and any other policy issued by the **Insurer**, or any affiliate thereof, of which this policy is a direct or indirect renewal or replacement, including any attachments and other materials submitted with or incorporated into such applications(s); and (ii) any publicly available documents filed by the **Company** with the U.S. Securities and Exchange Commission ("SEC") during the twelve (12) months prior to the inception of the **Policy Period**. All of these materials shall be deemed attached hereto, as if physically attached hereto, and incorporated herein.

(b)      **"Company"** means the entity identified in Item 1 of the Declarations and any **Subsidiary** thereof, including any such entity or **Subsidiary** as a debtor-in-possession

under United States bankruptcy law or similar status in any other jurisdiction.

(c) **"DIC Event"** means any of the following:

    (i)    actual or intended avoidance, rescission or cancellation of any **Underlying Policy** by an **Underlying Insurer**;

    (ii)    during or after the **Policy Period**, any **Underlying Insurer** being subject to a receivership, liquidation, bankruptcy, dissolution, rehabilitation or any similar proceeding or being taken over by any regulatory authority;

    (iii)    refusal or denial of an **Underlying Insurer** to provide coverage to any **Insured Person(s)** for the **Non-Indemnified Loss**;

    (iv)    failure of an **Underlying Insurer** to indemnify the **Insured Person(s)** for the **Non-Indemnified Loss** within sixty (60) days after the **Insured Person(s)** requests such indemnification;

    (v)    according to the terms and conditions of the **Underlying Policy**, the **Underlying Insurer** is not liable for the **Non-Indemnified Loss**; or

    (vi)    an **Underlying Insurer** failing or refusing to pay the **Non-Indemnified Loss** solely because the proceeds of the **Underlying Policy** are subject to an injunction or other order prohibiting such payment or to the automatic stay under the U.S. Bankruptcy Code or any similar law in another country.

(d) **"Extradition"** means any formal process by which an **Insured Person** located in any country is surrendered or sought to be surrendered to any other country for trial or otherwise to answer any criminal accusation.

(e) **"Followed Policy"** means the policy set forth in Item 5 of the Declarations.

(f) **"Independent Director(s)"** means any past, present or future director or **Manager** of the **Company** who is not, and never has been, an officer or employee of any **Company**.

(g) **"Insured Person(s)"** means:

    (i)    any past, present or future duly elected or appointed director, officer, trustee or governor of the **Company** or any **Manager**;

    (ii)    any past, present or future general counsel, comptroller or risk manager of the **Company** or any other natural person in an equivalent or comparable position;

    (iii)    with respect to any **Company** incorporated or based outside the United States, any natural person in an equivalent or comparable position to those described in (i) or (ii) above in any such other jurisdiction;

    (iv)    any other natural person not described in (i), (ii) or (iii) above who was, now is or shall be a full-time, part-time, seasonal or temporary employee of the **Company**; however, such person is an **Insured Person** only during such time as the **Claim** against such person is also made against a person described in (i), (ii) or (iii) above;

    (v)    the lawful spouses, legally recognised domestic partners, estates, heirs, legal representatives or assigns of any **Insured Person** described in (i), (ii), (iii) or (iv) above in the event of such **Insured Person's** death, incompetency, insolvency or bankruptcy, but solely as respects any **Claim** arising out of any actual or alleged **Wrongful Act** of such **Insured Person**; or

(vi)     any **Outside Entity Insured Person**.

**"Insured Person(s)"** will not be construed to include the **Company** or any other entity.

(h)     **"Manager"** means any natural person who was, now is or shall become a manager, member of the board of managers or equivalent executive of a **Company** or an **Outside Entity** that is a limited liability company.

(i)     **"Non-Indemnified Loss"** means:

(i)     **Loss** for which the **Company** or, if applicable, the **Outside Entity** is neither permitted nor required to indemnify or advance;

(ii)    **Loss** for which the **Company** or, if applicable, the **Outside Entity** refuses to indemnify or advance, or is financially unable to indemnify or advance; or

(iii)   **Loss** for which the **Company** or, if applicable, the **Outside Entity** fails, within sixty (60) days after a request by or on behalf of the **Insured Person**, to indemnify or advance.

However, **Loss** referred to in items (ii) and (iii) above shall be deemed **Non-Indemnified Loss** only if such **Insured Person** complies with Clause 16. SUBROGATION.

(j)     **"Outside Entity"** shall mean:

(i)     any not-for-profit entity, community chest, fund or foundation; or

(ii)    any other entity listed as such by endorsement to this policy,

for which an **Insured Person** serves as a director, officer, trustee or governor (or the equivalent thereof) at the specific request or direction of the **Company** or as part of the duties regularly assigned to the **Insured Person** by the **Company**. Any such **Insured Person** shall be referred to hereafter as an **"Outside Entity Insured Person."**

(k)     **"Policy Period"** shall mean the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy.

(l)     **"Underlying Insurer(s)"** means the insurer(s) that have issued the **Underlying Policies**.

(m)     **"Underlying Policies"** means the policies set forth in Item 5 of the Declarations.

(n)     **"Wrongful Act(s)"** means any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement or misleading statement by an **Insured Person** in his or her capacity as such, including as a fiduciary of any employee benefit plan sponsored by the **Company**, or any matter claimed against an **Insured Person** by reason of such capacity.

## 4.     EXCLUSIONS

This policy shall not follow any exclusions set forth in the **Followed Policy**.

This policy shall not cover any **Loss** in connection with that portion of any **Claim** against an **Insured**

**Person**:

(a)      for which the **Insured Person** is indemnified by reason of having given notice of a claim or circumstances under any prior directors and officers liability insurance policy of which this policy is a renewal or replacement; or

(b)      arising out of, based upon or attributable to: (i) any remuneration or profit to which a final and non-appealable judgment in the underlying proceeding establishes the **Insured Person** was not legally entitled; or (ii) any deliberate fraudulent or deliberate criminal act by the **Insured Person** if a final and non-appealable judgment in the underlying proceeding establishes that such deliberate fraudulent or deliberate criminal act was committed by such **Insured Person**; provided, however, that this exclusion shall not apply to **Defense Costs** or **Independent Directors**.

It is agreed that for the purpose of determining the applicability of Exclusion (b), the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by any **Insured Person** shall not be imputed to any other **Insured Person**.

## 5.     LIMIT OF LIABILITY

Except with respect to the Reinstated Limit of Liability (as defined below) if applicable, the Limit of Liability stated in Item 3 of the Declarations is the **Insurer's** maximum liability for all **Loss** arising out of all **Claims** first made during the **Policy Period** and the Discovery Period (if applicable), combined.

Liability shall attach to the **Insurer** under this policy only after the limits of liability of the **Underlying Policies** have been exhausted by the payment of loss covered by the **Underlying Policies**. However, if an **Underlying Insurer** does not pay a **Non-Indemnified Loss** due to a **DIC Event**, this policy shall, subject to its terms, conditions and exclusions, drop down and pay such **Non-Indemnified Loss** on behalf of the **Insured Person(s)** up to the applicable Limit of Liability stated in the Declarations. In the event one or more **Underlying Insurers** are also obligated to drop down and pay such **Non-Indemnified Loss**, this policy shall remain excess to the aggregate limit of liability of such **Underlying Insurer(s)** after such drop-down. Nothing contained herein shall be construed to increase the applicable Limit of Liability stated in the Declarations.

In the event the Limit of Liability stated in Item 3 of the Declarations is exhausted due to payment of **Loss** covered under this policy, then a reinstated Limit of Liability in the amount stated in Item 4 of the Declarations (the "Reinstated Limit of Liability") shall apply to any other **Non-Indemnified Loss** incurred by **Independent Directors** and covered under this policy; provided, however, the Reinstated Limit of Liability shall not apply to any **Claim** alleging, based upon, arising out of or attributable to the same, similar or related facts or **Wrongful Act(s)** alleged in or underlying any **Claim** which eroded or exhausted the Limit of Liability stated in Item 3 of the Declarations. No additional premium shall be charged or payable for the Reinstated Limit of Liability.

The Reinstated Limit of Liability (i) shall not apply to any **Insured Person** other than **Independent Directors**; (ii) shall be excess of all other insurance policies specifically excess of this policy; and (iii) shall be subject to all other terms and conditions of this policy.

**Defense Costs** are part of, and not in addition to, the Limits of Liability stated in Item 3 and Item 4 of the Declarations, and shall reduce and may exhaust such Limits of Liability.

## 6.     NOTICE PROVISIONS

The **Insured Person(s)** shall give written notice of a **Claim** or potential **Claim** to the **Insurer** at the address indicated in Item 7 A. of the Declarations. All other notices to the **Insurer** under this policy shall be given to the address indicated in Item 7 B. of the Declarations.

The **Company** or an **Insured Person** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of a **Claim** made against an **Insured Person** as soon as practicable after the general counsel or risk manager (or individuals with equivalent responsibilities) of the entity identified in Item 1 of the Declarations becomes aware of the **Claim**. In no event shall such notice be provided later than sixty (60) days after the end of the **Policy Period** (or Discovery Period if applicable).

In the event the **Company** or the **Insured Persons** fail to provide notice of a **Claim** in accordance with the above, the **Insurer** shall not be entitled to deny coverage for the **Claim** based solely upon late notice, unless the **Insurer** can establish that its interests were materially prejudiced by reason of such late notice.

If during the **Policy Period** or during the Discovery Period (if applicable) an **Insured Person** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured Person** and shall give written notice to the **Insurer** of the circumstances including the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then any **Claim** that is subsequently made against an **Insured Person** alleging, arising out of, based upon or attributable to such circumstances, shall be considered made at the time written notice of such circumstances was given to the **Insurer**.

## 7. ADVANCEMENT OF DEFENSE COSTS

In the event the **Company** refuses or is financially unable to advance **Defense Costs** and if the **Underlying Insurers** fail to advance such **Defense Costs**, then upon the **Insured Person's** request and if proper documentation accompanies this request, the **Insurer** shall advance such **Defense Costs** on a current basis. The **Insurer** shall not advance **Defense Costs** on a current basis with respect to any **Claim** for which the **Insurer** has denied liability in full. In the event of any advance payments by the **Insurer**, the **Insured Persons** agree that they shall repay to the **Insurer**, severally according to their respective interests, all such payments in the event and to the extent it is finally determined that any such **Insured Person** is not entitled under this policy to coverage for such **Loss**.

## 8. CLAIM PARTICIPATION AND COOPERATION CLAUSE

The **Insurer** does not assume any duty to defend. However, the **Insurer** shall have the right, but not the duty, to fully and effectively associate with the **Insured Person(s)** in the control, investigation, defense and settlement of any **Claim**.

The **Insured Person(s)** shall defend and contest any **Claim** made against them. The **Insured Person(s)** shall not admit or assume any liability, offer to settle, enter into any settlement agreement, or stipulate to any judgment without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld. As a condition precedent to coverage under this policy for a settlement amount, stipulated judgment or judgment, the following is required: (i) with respect to settlements or stipulated judgments, the **Insurer's** written consent to the terms of the settlement or stipulated judgment must be obtained in advance, or (ii) with respect to all other judgments, the **Insurer** must have been permitted, upon its request, to fully and effectively associate in the defense of the **Claim**.

The **Company** and each and every **Insured Person** shall give the **Insurer** full cooperation and such information as the **Insurer** may reasonably require relating to the defense of any **Claim** and the

prosecution of any counterclaim, cross-claim or third-party claim, including without limitation, the assertion of indemnification rights.

Neither the **Company** nor any **Insured Person** shall cancel or modify any **Underlying Policy** in a manner that would prejudice or alter the **Insurer's** rights and obligations under this policy.

## 9.      DISCOVERY CLAUSE

This policy shall follow the provisions of the **Followed Policy** as respects any Discovery Period or extended reporting period; however, this policy shall not follow such provisions of the **Followed Policy** as respects the premium to be charged for any Discovery Period or extended reporting period.

The Discovery Period premium for this policy shall be determined by the **Insurer** at its sole and absolute discretion; provided, however, that such premium: (i) for a one year period, shall not exceed 125%; (ii) for a three year period, shall not exceed 225%; and (iii) for a six year period, shall not exceed 300%, of the total annual premium charged for this policy.  In no event shall the Discovery Period under this policy be longer than the Discovery Period or extended reporting period purchased under the **Underlying Policies**.

## 10.     REPRESENTATIONS AND SEVERABILITY

The **Insurer** has relied upon the information contained in the **Application** in issuing this policy.  The **Application** shall be construed as a separate **Application** for coverage by each **Insured Person**.  No knowledge, statement or representation made in the **Application** by any **Insured Person** will be imputed to any other **Insured Person** for the purpose of determining coverage under this policy for any **Insured Person**.

The **Insurer** irrevocably waives any right it may have to rescind or void this policy, in whole or in part, on any grounds**.**

## 11.     CANCELLATION

This policy shall not be subject to cancellation, except that the **Insurer** may cancel this policy solely for non-payment of premium by providing written notice to the **Company**, at the address set forth in the Declarations.  If this policy is cancelled by the **Insurer**, the policy will be deemed terminated as of the inception of the **Policy Period**.

## 12.     OTHER INSURANCE AND INDEMNIFICATION

The insurance provided by this policy shall apply only as excess over any other valid and collectible insurance whether such insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by this policy.  This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

In connection with any **Claim** made against an **Outside Entity Insured Person,** this policy shall apply specifically excess of any indemnification from an **Outside Entity** and any insurance coverage provided to an **Outside Entity** or its directors, officers, trustees or governors (or equivalent).  In the event such insurance coverage provided to an **Outside Entity** or its directors, officers, trustees or governors (or equivalent) is provided by the **Insurer** (or would be except for the application of any retention,

exhaustion of a limit of liability or failure to submit notice of a claim), then the applicable Limit of Liability under this policy shall be reduced by the amount of loss paid or otherwise payable by the **Insurer** under such other insurance with respect to such **Claim**.

## 13.    NOTICE AND AUTHORITY

It is agreed that the **Company** identified in Item 1 of the Declarations shall act (unless the **Insurer** is advised expressly in writing to the contrary) on behalf of each and every **Insured Person** with respect to the giving and receiving of notice of cancellation or non-renewal, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising of any right to a Discovery Period.

## 14.    ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

## 15.    BANKRUPTCY

Bankruptcy or insolvency of any **Company** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations hereunder.

It is understood and agreed that the coverage provided under this policy is intended to protect and benefit the **Insured Persons**.  Further, if a liquidation or reorganization proceeding involving the **Company** is commenced (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively, "Bankruptcy Law") then, in regard to a covered **Claim** under this policy, the **Insurer**, the **Company** and the **Insured Persons** hereby:

(i)      waive and release any automatic stay or injunction to the extent it may apply in such  proceeding to the policy or its proceeds under such Bankruptcy Law; and

(ii)     agree not to oppose or object to any efforts by the **Insurer**, **Company** or any **Insured Person** to obtain relief from any such stay or injunction.

In the event the **Company** becomes a debtor-in-possession or equivalent status under such Bankruptcy Law, and the aggregate **Loss** under this policy exceeds the remaining available Limit of Liability, the **Insurer** shall:

(i)      first pay the **Non-Indemnified Loss** allocable to **Wrongful Acts** that were actually or allegedly caused, committed, or attempted by any **Insured Person** prior to the **Company** becoming a debtor-in-possession or equivalent status, then

(ii)     pay any remaining **Non-Indemnified Loss** allocable to **Wrongful Acts** that were actually or allegedly caused, committed, or attempted by any **Insured Person** after the **Company** became a debtor-in-possession or equivalent status.

## 16.    SUBROGATION

In addition to any right of subrogation existing at law, in equity or otherwise, in the event of any payment by the **Insurer** under this policy the **Insurer** shall be subrogated to the extent of such payment to all of the **Company's** and the **Insured Person(s)'** rights of recovery, including but not limited to any of the **Insured Person(s)'** rights of recovery against the **Company** for indemnification and any of the

**Company's** and the **Insured Person(s)'** rights of recovery against any **Underlying Insurer** that is the cause or subject of a **DIC Event**. The **Company** and the **Insured Person(s)** shall execute all papers required (including those documents necessary for the **Insurer** to bring suit or other form of proceeding in their name) and do everything that may be necessary to pursue and secure such rights. However, the **Insurer** shall not exercise its subrogation rights against an **Insured Person** unless Exclusion 4(b) above applies to such **Insured Person**.

## 17. HEADINGS

The descriptions in the headings and any subheading of this policy (including any titles given to any endorsement attached hereto) are inserted solely for convenience and do not constitute any part of this policy's terms or conditions.

Endorsement No.: 8
This endorsement, effective: May 2, 2013
(at 12:01 a.m. Standard Time at the address of the Company as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0305-5616
Issued to: Exide Technologies
By: Allied World National Assurance Company

## AMEND POLICY PERIOD

It is understood and agreed that Item 2 of the Declarations, POLICY PERIOD, is deleted in its entirety and replaced with the following:

**ITEM 2.**     POLICY PERIOD:     From: May 5, 2012  To: May 5, 2014
(12:01 a.m. standard time at the address stated in Item 1)

All **Claims** made during the **Policy Period** and during the amended or extended **Policy Period** set forth in this endorsement shall be subject to the aggregate Limit of Liability set forth in Item 3 of the Declarations.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

Endorsement No.: 9
This endorsement, effective: May 5, 2014
(at 12:01 a.m. Standard Time at the address of the Company as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0305-5616
Issued to: Exide Technologies
By: Allied World National Assurance Company

## AMEND POLICY PERIOD

It is understood and agreed that Item 2 of the Declarations, POLICY PERIOD, is deleted in its entirety and replaced with the following:

**ITEM 2.**          POLICY PERIOD:          From: May 5, 2012  To: December 31, 2014
                              (12:01 a.m. standard time at the address stated in Item 1)

All **Claims** made during the **Policy Period** and during the amended or extended **Policy Period** set forth in this endorsement shall be subject to the aggregate Limit of Liability set forth in Item 3 of the Declarations.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

DO 00052 00 (06/09)

Endorsement No.: 10
This endorsement, effective: December 31, 2014
(at 12:01 a.m. Standard Time at the address of the Company as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0305-5616
Issued to: Exide Technologies
By: Allied World National Assurance Company

## AMEND POLICY PERIOD

It is understood and agreed that Item 2 of the Declarations, POLICY PERIOD, is deleted in its entirety and replaced with the following:

**ITEM 2.**      POLICY PERIOD:      From: May 5, 2012   To: June 1, 2015
(12:01 a.m. standard time at the address stated in Item 1)

All **Claims** made during the **Policy Period** and during the amended or extended **Policy Period** set forth in this endorsement shall be subject to the aggregate Limit of Liability set forth in Item 3 of the Declarations.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**