# EXHIBIT B

April 4, 2012

Kremena Vassileva
AON RISK SERVICES SOUTH, INC. (FSG POLICY INTAKE)
1000 N. MILWAUKEE AVENUE
GLENVIEW, IL 60025-0000

RE:   Exide Technologies

Insuring Company: Federal Insurance Company

Dear Kremena:

Enclosed is our Executive Protection Portfolio Policy for the above referenced Insured.

I want to thank you for the opportunity to underwrite this account.

Please let me know if I can be of further assistance.

Sincerely,

*Kathleen M. Knox*

Kathleen M Knox

CHUBB SPECIALTY INSURANCE

rdc

**Executive Protection Portfolio**

Insured:  Exide Technologies                                        Date:  04/04/2012

Producer:  AON RISK SERVICES SOUTH, INC. (FSG POLICY INTAKE)
           1000 N. MILWAUKEE AVENUE
           GLENVIEW, IL 60025-0000

Company:  Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Product:  Executive Protection Portfolio

Policy Number:  8223-7519

Policy Period:  May 5, 2012 to May 5, 2013

NOTE: - PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE
RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE.

| Product | Effective Date | Commission Rate | Premium |
|---------|----------------|-----------------|---------|
| EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY | 05/05/12 | 13.00 % | $200,000.00 |
|  |  |  |  |
|  |  |  |  |

* For Kentucky policies, amount displayed includes tax and collection fees.

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $200,000.00 |
| **TOTAL INSTALLMENT PREMIUM DUE** | $200,000.00 |

WHEN REMITTING PLEASE INDICATE POLICY OR CERTIFICATE NUMBER

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)
### Insuring Company: Federal Insurance Company

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), effective December 26, 2007, this policy makes available to you insurance for losses arising out of certain acts of terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

10-02-1281 (Ed. 1/2003)

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

# IMPORTANT NOTICE TO POLICYHOLDERS

Insuring Company: Federal Insurance Company

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers"). Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478. Additional information may be available from your producer.

Thank you for choosing Chubb.

# Notice of Loss Control Services

Insuring Company: Federal Insurance Company

As a Chubb policyholder, you have loss prevention information and/or services available to you, as described in this Notice.

## Employment Practices Liability (EPL) Loss Prevention Services

- ***Employment Practices Loss Prevention Guidelines* Manual**
  Written by Seyfarth Shaw exclusively for Chubb, this manual provides an overview of key employment issues and offers proactive ideas for avoiding employment lawsuits. To order the *Employment Practices Loss Prevention Guidelines,* simply call **1.866.282.9001,** order 14-01-0061, and provide your mailing address.

Additional employment practices loss prevention services are available to customers who purchase employment practices liability insurance from Chubb. For more information, simply consult http://csi.chubb.com/epllossprevention or email csi-info@chubb.com.

## Directors and Officers (D&O) Liability Loss Prevention Services

- ***Directors and Officers Liability Loss Prevention* Manual**
  Written by Dan A. Bailey exclusively for Chubb, *Directors and Officers Liability Loss Prevention* discusses general principles governing D&O liability and potential exposures for directors and officers. Mr. Bailey has also written *Directors and Officers Securities Litigation Loss Prevention* to address the exposures of publicly traded companies. To order *Directors and Officers Liability Loss Prevention (form # 14-01-0035)* or *Directors and Officers Securities Litigation Loss Prevention (form # 14-01-0448),* simply call **1.866.282.9001,** order the form(s) you need, and provide your mailing address.

- ***Loss Prevention Guidelines for Independent Directors***
  Written exclusively for Chubb by Dan A. Bailey, this manual discusses roles played by independent directors, the increasing importance of independent directors, and corporate governance best practices. To order *Loss Prevention Guidelines for Independent Directors*, simply call **1.866.282.9001**, order 14-01-0679, and provide your mailing address.

  Additionally, Chubb has prepared *The Great M&A Wave: Mergers, Acquisitions and Business Discontinuations Risk and Insurance Management Handbook*, which discusses the trends, exposures and strategies to manage the M&A risks. To order *The Great M&A Wave: Mergers, Acquisitions and Business Discontinuations Risk and Insurance Management Handbook*, simply call **1.866.282.9001**, order 07-01-0101, and provide your mailing address.

## Fiduciary Liability Loss Prevention Services

- ***Fiduciary Liability Loss Prevention* Manual**
  Written by Dan A. Bailey exclusively for Chubb, *Fiduciary Liability Loss Prevention* discusses general principles governing fiduciary liability and reviews basic fiduciary duties under ERISA. To order *Fiduciary Liability Loss Prevention,* simply call **1.866.282.9001,** order 14-01-0039, and provide your mailing address.

14-02-7990 (Ed. 5/2004) rev.

## Crime Loss Prevention Services

- **White Collar Crime Loss Prevention Manual**
  Written by Ernst & Young exclusively for Chubb, *White Collar Crime: Loss Prevention through Internal Control* discusses general principles governing workplace crime exposures. To order *White Collar Crime: Loss Prevention through Internal Control,* simply call **1.866.282.9001,** order 14-01-0044, and provide your mailing address.

## Kidnap/Ransom & Extortion Loss Prevention Services

- **Kidnap/Ransom & Extortion Loss Prevention Manuals**
  Chubb offers *Managing Terrorism Risks* and *Managing Travel Risks,* written exclusively for Chubb by the Ackerman Group, Inc., an international security consultant. To order the *Managing Terrorism Risks,* simply call **1.866.282.9001,** order 14-01-0179, and provide your mailing address. To order the *Managing Travel Risks,* simply call **1.866.282.9001,** order 14-01-0178, and provide your mailing address.

---------------------

The services provided are advisory in nature. While this program is offered as a resource in developing or maintaining a loss prevention program, you should consult competent legal counsel to design and implement your own program. No liability is assumed by reason of the services, access or information provided. All services are subject to change without notice.

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under
the laws of Indiana, herein called the Company

Policy Number: 8223-7519

THE EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY, FIDUCIARY LIABILITY, OUTSIDE DIRECTORSHIP LIABILITY AND EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTIONS (WHICHEVER ARE PURCHASED) PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE APPLICABLE LIMIT(S) OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF "DEFENSE COSTS" UNLESS OTHERWISE SPECIFIED HEREIN. "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. READ THE ENTIRE POLICY CAREFULLY.

Item 1.   **Parent Organization:**    Exide Technologies
         **Principal Address:**    13000 Deerfield Parkway
                                    Building 200
                                    Milton, GA 30004

Item 2.   **Policy Period:**    From   12:01 A.M. on    May 5, 2012
                              To      12:01 A.M. on    May 5, 2013
                              Local time at the address shown in Item 1.

Item 3.   Coverage Summary
         Description:
           GENERAL TERMS AND CONDITIONS
           EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY

Item 4.   Termination of
         Prior Bonds or Policies: 8223-7519  (May 5, 2011 - May 5, 2012)

In witness whereof, the Company issuing this policy has caused this policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

_____
Secretary

04/04/12
_____
Date

_____
President

_____
Authorized Representative

In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this policy, the Company and the Insureds agree as follows:

*Territory*

1.    Coverage shall extend anywhere in the world.

*Terms and Conditions*

2.    Except for these General Terms and Conditions or unless stated to the contrary in any coverage section of this policy, the terms and conditions of each coverage section shall apply only to that coverage section.  If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any coverage section, the terms and conditions of such coverage section shall control for purposes of that coverage section.  Any defined term referenced in these General Terms and Conditions but defined in a coverage section shall, for purposes of coverage under that coverage section, have the meaning set forth in that coverage section.

*Definitions*

3.    When used in this policy:

**Claim** shall have the meaning set forth in the applicable coverage section.

**Insured** shall have the meaning set forth in the applicable coverage section.

**Parent Organization** means the organization designated in Item 1 of the Declarations of these General Terms and Conditions.

**Policy Period** means the period of time specified in Item 2 of the Declarations of these General Terms and Conditions, subject to prior termination in accordance with Subsection 11 below.  If this period is less than or greater than one year, then the limits of liability specified in the Declarations for each coverage section shall be the Company's maximum limit of liability under such coverage section for the entire period.

*Limits of Liability and Retentions*

4.    Unless stated to the contrary in any coverage section, the limits of liability and retentions shown for each coverage section are separate limits of liability and separate retentions pertaining to the coverage section for which they are shown.  Unless stated to the contrary in any coverage section of this policy, the payment of a retention under one coverage section shall not constitute payment of, and shall not reduce, the applicable retention under any other coverage section.

*Notice*

5.  Any notice to the Company with respect to any coverage section shall designate the coverage section under which notice is being given and shall be treated as notice only under the coverage section(s) so designated.

Notice to the Company of a **Claim**, or of circumstances which could give rise to a **Claim**, shall be given in writing addressed to:

> Attn: Claims Department
> Chubb Group of Insurance Companies
> 82 Hopmeadow Street
> Simsbury, Connecticut 06070-7683

All other notices to the Company shall be given in writing addressed to:

> Attn: Underwriting
> Chubb Group of Insurance Companies
> 82 Hopmeadow Street
> Simsbury, Connecticut 06070-7683

Any such notice shall be effective on the date of receipt by the Company at such address.

### Valuation and Foreign Currency

6.  All premiums, limits, retentions, loss and other amounts under this policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in any coverage section, if a judgment is rendered, a settlement is denominated or any element of loss under this policy is stated in a currency other than United States of America dollars, payment under this policy shall be made in United States of America dollars at the rate of exchange published in The Wall Street Journal on the date the judgment becomes final, the amount of the settlement is agreed upon or the element of loss is due, respectively.

### Subrogation

7.  In the event of any payment under this policy, the Company shall be subrogated to the extent of such payment to all the **Insured**'s rights of recovery, and such **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insured**.

### Action Against the Company

8. No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy. No person or entity shall have any right under this policy to join the Company as a party to any action against any **Insured** to determine such **Insured**'s liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

### Parent Organization Rights and Obligations

9. By acceptance of this policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: the payment of premiums and the receiving of any return premiums that may become due under this policy; the negotiation, agreement to and acceptance of endorsements; the giving or receiving of any notice provided for in this policy (except the giving of notice to apply for an Extended Reporting Period); the adjustment of loss amounts; and the receipt or enforcement of payment of loss (and the **Parent Organization** further agrees that it shall be responsible for application of any such payment as provided in this policy). Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

### Alteration and Assignment

10. No change in, modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized employee of Chubb & Son, a division of Federal Insurance Company.

### Termination of Policy or Coverage Section

11. This policy or any coverage section shall terminate at the earliest of the following times:

    (a) sixty days after receipt by the **Parent Organization** of written notice of termination from the Company for any reason other than non-payment of premium;

    (b) twenty days after receipt by the **Parent Organization** of written notice of termination from the Company for non-payment of premium;

    (c) upon receipt by the Company of written notice of termination from the **Parent Organization**; provided that this policy may not be terminated by the **Parent Organization** after the effective date of any acquisition of the **Parent Organization** as described in the Changes in Exposure subsection of the applicable coverage section of this policy;

    (d) upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations of these General Terms and Conditions; or

    (e) at such other time as may be agreed upon by the Company and the **Parent Organization**.

The Company shall refund the unearned premium computed at customary short rates if this policy or any coverage section is terminated by the **Parent Organization**. Under any other

circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of a notice of termination, but such payment shall be made as soon as practicable thereafter.

### Termination of Prior Bonds or Policies

12. Any bonds or policies issued by the Company or its affiliates and specified in Item 4 of the Declarations of these General Terms and Conditions shall terminate, if not already terminated, as of the inception of this policy.

### Bankruptcy

13. Bankruptcy or insolvency of any **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this policy.

### Headings

14. The descriptions in the headings and sub-headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

# Schedule of Forms

To be attached to and form part of
Policy No.    8223-7519

Company:    Federal Insurance Company

Issued to:    Exide Technologies

Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

14-02-12459 (9/06 ed.)

14-02-7452 (11/02 ed.)

14-02-9228 (2/10 ed.)

Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

14-02-10630 (5/09 ed.)

14-02-11714 (12/05 ed.)

14-02-12497 (10/06 ed.)

14-02-12881 (9/11 ed.)

14-02-13338 (8/07 ed.)

14-02-13769 (3/11 ed.)

14-02-14077 (4/08 ed.)

14-02-14813 (6/10 ed.)

14-02-15155 (12/09 ed.)

14-02-15479 (11/09 ed.)

14-02-17000GA (6/10 ed.)

14-02-17167 (9/10 ed.)

14-02-17977 (3/12 ed.)

14-02-7453 (11/02 ed.)

14-02-7887 (12/10 ed.)

14-02-8751 (8/03 ed.)

14-02-8761 (8/03 ed.)

14-02-9062 (11/03 ed.)

Q11-1650 (8/11 ed.)

Coverage Section:  Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012

Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8223-7519

Issued to:  Exide Technologies

---

### AMEND SUBSECTION 11 TERMINATION OF POLICY OR COVERAGE SECTION ENDORSEMENT

In consideration of the premium charged, it is agreed that, notwithstanding any provision to the contrary in this policy or any endorsement thereto, the Company shall only have the right to terminate this policy or any coverage section for non-payment of premium; accordingly, any reference to paragraph (a) of Subsection 11, Termination of Policy or Coverage Section, in this policy or any endorsement thereto, is deleted.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Coverage Section: Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement: May 5, 2012        Company: Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8223-7519

Issued to: Exide Technologies

---

## GEORGIA AMENDATORY ENDORSEMENT
## TO THE GENERAL TERMS AND CONDITIONS SECTION

In consideration of the premium charged, it is agreed that:

1.      To the extent required by the Georgia insurance laws, statements made in the Application(s) for coverage under the policy are representations and no such statements will be deemed to be either express or implied warranties.

2.      Subsection 11. Termination of Policy or Coverage Section (d) of the General Terms and Conditions Section is amended by adding the following to the end of such paragraph (d):

   "provided that, non-renewal by the Company is effective only if the Company mails or delivers at least forty-five (45) days' advance written notice of non-renewal, stating the reasons for such non-renewal, to the Parent Organization; or"

3.      Subsection 11. Termination of Policy or Coverage Section of the General Terms and Conditions Section is amended further by adding the following paragraphs at the end of such Subsection:

   "Any notice of cancellation by the Company will state the reason(s) for cancellation and the effective date of cancellation.

   The Company may condition renewal of this policy or any coverage section upon an increase in premium (in addition to an increase in premium due to a change in risk or exposure) which exceeds 15% of the current policy's premium, or a change in any provision which limits or restricts coverage, by mailing or delivering to the Parent Organization at least forty-five (45) days advance written notice of such renewal changes. If such increase in premium exceeds 15%, the notice to the Parent Organization shall indicate the dollar amount of the increase."

The policy is deemed to be amended to the extent necessary to effectuate the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the policy or any endorsement to the policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such policy or endorsement provisions comply with the applicable insurance laws of the state of Georgia.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Coverage Section: Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012

Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8223-7519

Issued to: Exide Technologies

## COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

It is agreed that this insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the coverage provided by this insurance.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

**Executive Protection Portfolio** [SM]
*Executive Liability and Entity Securities Liability*
*Coverage Section*

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under
the laws of Indiana, herein called the Company

**THIS COVERAGE SECTION PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. READ THE ENTIRE POLICY CAREFULLY.**

Item 1. **Parent Organization:**
Exide Technologies
13000 Deerfield Parkway
Building 200
Milton, GA 30004

Item 2. Limits of Liability:

| | | |
|---|---|---|
| (A) Each **Claim**: | | $10,000,000.00 |
| (B) Each **Policy Period**: | | $10,000,000.00 |
| (C) Sublimit for all **Securityholder Derivative Demands** under Insuring Clause 4: | | $250,000.00 |

Item 3. Coinsurance Percentage:

| | |
|---|---|
| (A) **Securities Claims**: | 0.00% |
| (B) **Claims** other than **Securities Claims**: | 0.00% |

Item 4. Retention:

| | |
|---|---|
| (A) Insuring Clauses 1 and 4: | None |
| (B) Insuring Clause 2 (**Claims** other than **Securities Claims**): | $250,000.00 |
| (C) Insuring Clauses 2 and 3 (**Securities Claims** only): | $1,000,000.00 |

Item 5. **Organization:**

Exide Technologies and its subsidiaries

14-02-7303DFED (Ed. 11/2002)          Page 1 of 19

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

*Executive Protection Portfolio* [SM]
*Executive Liability and Entity Securities Liability*
*Coverage Section*

Item 6.   Extended Reporting Period:

    (A) Additional Period:        1 year
    (B) Additional Premium:    150 % of Annualized Premium for the Expiring **Policy Period**

Item 7.  Pending or Prior Date:    May 5, 2004

**In consideration of payment of the premium and subject to the Declarations, the General Terms and Conditions, and the limitations, conditions, provisions and other terms of this coverage section, the Company and the Insureds agree as follows:**

## Insuring Clauses

*Executive Liability Coverage Insuring Clause 1*

1.    The Company shall pay, on behalf of each of the **Insured Persons**, **Loss** for which the **Insured Person** is not indemnified by the **Organization** and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person**, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Executive Indemnification Coverage Insuring Clause 2*

2.    The Company shall pay, on behalf of the **Organization**, **Loss** for which the **Organization** grants indemnification to an **Insured Person**, as permitted or required by law, and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person**, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Entity Securities Coverage Insuring Clause 3*

3.    The Company shall pay, on behalf of the **Organization**, **Loss** which the **Organization** becomes legally obligated to pay on account of any **Securities Claim** first made against the **Organization** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by the **Organization** or the **Insured Persons** before or during the **Policy Period**, but only if such **Securities Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Securityholder Derivative Demand Coverage Insuring Clause 4*

4.    The Company shall pay, on behalf of the **Organization**, **Investigative Costs** resulting from a **Securityholder Derivative Demand** first received by the **Organization** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted before or during the **Policy Period**, but only if such **Securityholder Derivative Demand** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

## Definitions

5.    When used in this coverage section:

**Application** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insureds** to the Company for this coverage section or for any coverage section or policy of which this coverage section is a direct or indirect renewal or replacement.

**Application** shall also include, for each **Organization**, all of the following documents whether or not submitted with or attached to any such signed application: (i) the Annual Report (including financial statements) last issued to shareholders before this policy's inception date; (ii) the report last filed with the Securities and Exchange Commission on Form 10-K before this policy's inception date; (iii) the report last filed with the Securities and Exchange Commission on Form 10-Q before this policy's inception date; (iv) the proxy statement and (if different) definitive proxy statement last filed with the Securities and Exchange Commission before this policy's inception date; (v) all reports filed with the Securities and Exchange Commission on Form 8-K during the twelve months preceding this policy's inception date; and (vi) all reports filed with the Securities and Exchange Commission on Schedule 13D, with respect to any equity securities of such **Organization**, during the twelve months preceding this policy's inception date.  All such applications, attachments, materials and other documents are deemed attached to, incorporated into and made a part of this coverage section.

**Claim** means:

(1)    when used in reference to the coverage provided by Insuring Clause 1 or 2:

    (a)    a written demand for monetary damages or non-monetary relief;

    (b)    a civil proceeding commenced by the service of a complaint or similar pleading; or

    (c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document,

against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom;

(2)    when used in reference to the coverage provided by Insuring Clause 3:

    (a)    a written demand for monetary damages or non-monetary relief;

    (b)    a civil proceeding commenced by the service of a complaint or similar pleading; or

    (c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document, but only while such proceeding is also pending against an **Insured Person**,

against an **Organization** for a **Wrongful Act**, including any appeal therefrom; or

(3)    when used in reference to the coverage provided by Insuring Clause 4, a **Securityholder Derivative Demand**.

Except as may otherwise be provided in Subsection 12, Subsection 13(g),or Subsection 15(b) of this coverage section, a **Claim** will be deemed to have first been made when such **Claim** is commenced as set forth in this definition (or, in the case of a written demand, including but not limited to any **Securityholder Derivative Demand**, when such demand is first received by an **Insured**).

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of the directors, officers or employees of the **Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

**Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Organization**.

**Financial Impairment** means the status of an **Organization** resulting from:

(a)    the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization**; or

(b)    such **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Insured** means the **Organization** and any **Insured Person**.

**Insured Capacity** means the position or capacity of an **Insured Person** that causes him or her to meet the definition of **Insured Person** set forth in this coverage section. **Insured Capacity** does not include any position or capacity held by an **Insured Person** in any organization other than the **Organization**, even if the **Organization** directed or requested the **Insured Person** to serve in such position or capacity in such other organization.

**Insured Person** means any natural person who was, now is or shall become:

(a)    a duly elected or appointed director, officer, **Manager**, or the in-house general counsel of any **Organization** chartered in the United States of America;

(b)    a holder of a position equivalent to any position described in (a) above in an **Organization** that is chartered in any jurisdiction other than the United States of America; or

(c)    solely with respect to **Securities Claims**, any other employee of an **Organization**, provided that such other employees shall not, solely by reason of their status as employees, be **Insured Persons** for purposes of Exclusion 6(c).

**Investigative Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees, or benefits of the directors, officers or employees of the **Organization**) incurred by the **Organization** (including its Board of Directors or any committee of its Board of Directors) in investigating or evaluating on behalf of the **Organization** whether it is in the

best interest of the **Organization** to prosecute the claims alleged in a **Securityholder Derivative Demand**.

**Loss** means:

(a) the amount that any **Insured Person** (for purposes of Insuring Clauses 1 and 2) or the **Organization** (for purposes of Insuring Clause 3) becomes legally obligated to pay on account of any covered **Claim**, including but not limited to damages (including punitive or exemplary damages, if and to the extent that such punitive or exemplary damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant **Insureds**, to the Company, or to the **Claim** giving rise to the damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**; or

(b) for purposes of Insuring Clause 4, covered **Investigative Costs**.

**Loss** does not include:

(a) any amount not indemnified by the **Organization** for which an **Insured Person** is absolved from payment by reason of any covenant, agreement or court order;

(b) any costs incurred by the **Organization** to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c) any amount incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that is not then a **Claim** even if (i) such amount also benefits the defense of a covered **Claim**, or (ii) such action, proceeding or demand subsequently gives rise to a **Claim**;

(d) taxes, fines or penalties, or the multiple portion of any multiplied damage award, except as provided above with respect to punitive or exemplary damages;

(e) any amount not insurable under the law pursuant to which this coverage section is construed, except as provided above with respect to punitive or exemplary damages;

(f) any amount allocated to non-covered loss pursuant to Subsection 17 of this coverage section; or

(g) any amount that represents or is substantially equivalent to an increase in the consideration paid (or proposed to be paid) by an **Organization** in connection with its purchase of any securities or assets.

**Manager** means any natural person who was, now is or shall become a manager, member of the Board of Managers or equivalent executive of an **Organization** that is a limited liability company.

**Organization** means, collectively, those organizations designated in Item 5 of the Declarations for this coverage section, including any such organization in its capacity as a

debtor in possession under the United States bankruptcy law or in an equivalent status under the law of any other country.

**Pollutants** means (a) any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof, including, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials, or (b) any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products or any noise.

**Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Securities Claim** means that portion of a **Claim** which:

    (a)   is brought by a securityholder of an **Organization**

        (i)   in his or her capacity as a securityholder of such **Organization**, with respect to his or her interest in securities of such **Organization**, and against such **Organization** or any of its **Insured Persons**; or

        (ii)  derivatively, on behalf of such **Organization**, against an **Insured Person** of such **Organization**; or

    (b)   alleges that an **Organization** or any of its **Insured Persons**

        (i)   violated a federal, state, local or foreign securities law or a rule or regulation promulgated under any such securities law; or

        (ii)  committed a **Wrongful Act** that constitutes or arises from a purchase, sale, or offer to purchase or sell securities of such **Organization**,

provided that **Securities Claim** does not include any **Claim** by or on behalf of a former, current, future or prospective employee of the **Organization** that is based upon, arising from, or in consequence of any offer, grant or issuance, or any plan or agreement relating to the offer, grant or issuance, by the **Organization** to such employee in his or her capacity as such of stock, stock warrants, stock options or other securities of the **Organization**, or any payment or instrument the amount or value of which is derived from the value of securities of the **Organization**; and provided, further, that **Securities Claim** does not include any **Securityholder Derivative Demand**.

**Securityholder Derivative Demand** means:

    (a)   any written demand, by a securityholder of an **Organization**, upon the Board of Directors or Board of **Managers** of such **Organization** to bring a civil proceeding in a court of law against an **Insured Person** for a **Wrongful Act**; or

    (b)   any lawsuit by a securityholder of an **Organization**, brought derivatively on behalf of such **Organization** against an **Insured Person** for a **Wrongful Act** without first making a demand as described in (a) above,
provided such demand or lawsuit is brought and maintained without any active assistance or participation of, or solicitation by, any **Insured Person**.

**Subsidiary**, either in the singular or plural, means any organization while more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for election of or to appoint directors or **Managers** of such organization are owned or controlled, directly or indirectly, in any combination, by one or more **Organizations**.

**Wrongful Act** means:

(a) any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by an **Insured Person** in his or her **Insured Capacity**, or for purposes of coverage under Insuring Clause 3, by the **Organization**, or

(b) any other matter claimed against an **Insured Person** solely by reason of his or her serving in an **Insured Capacity**.

---

### Exclusions

*Applicable To All Insuring Clauses*

6. The Company shall not be liable for **Loss** on account of any **Claim**:

(a) based upon, arising from, or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2 of the Declarations of the General Terms and Conditions, was the subject of any notice given under any policy or coverage section of which this coverage section is a direct or indirect renewal or replacement;

(b) based upon, arising from, or in consequence of any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(c) brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion 6(c) shall not apply to:

(i) a **Claim** brought or maintained derivatively on behalf of the **Organization** by one or more securityholders of the **Organization**, provided such **Claim** is brought and maintained without any active assistance or participation of, or solicitation by, any **Insured Person**;

(ii) an employment **Claim** brought or maintained by or on behalf of an **Insured Person**;

(iii) a **Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this coverage section; or

(iv) a **Claim** brought by an **Insured Person** who has not served in an **Insured Capacity** for at least four (4) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without any active assistance or participation of, or solicitation by, the **Organization** or any other **Insured**

**Person** who is serving or has served in an **Insured Capacity** within such four (4) year period;

(d) based upon, arising from, or in consequence of:

  (i) any actual, alleged, or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or

  (ii) any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request,

  including but not limited to any **Claim** for financial loss to the **Organization**, its securityholders or its creditors based upon, arising from, or in consequence of any matter described in clause (i) or clause (ii) of this Exclusion 6(d);

(e) for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion 6(e) shall not apply to mental anguish or emotional distress for which a claimant seeks compensation in an employment **Claim**;

(f) for an actual or alleged violation of the responsibilities, obligations or duties imposed on fiduciaries by the Employee Retirement Income Security Act of 1974, or any amendments thereto, or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(g) for **Wrongful Acts** of an **Insured Person** in his or her capacity as a director, officer, manager, trustee, regent, governor or employee of any entity other than the **Organization**, even if the **Insured Person's** service in such capacity is with the knowledge or consent or at the request of the **Organization**; or

(h) made against a **Subsidiary** or an **Insured Person** of such **Subsidiary** for any **Wrongful Act** committed, attempted, or allegedly committed or attempted during any time when such entity was not a **Subsidiary**.

---

*Applicable To Insuring Clauses 1 and 2 Only*

7. The **Company** shall not be liable under Insuring Clause 1 or 2 for **Loss** on account of any **Claim** made against any **Insured Person**:

  (a) for an accounting of profits made from the purchase or sale by such **Insured Person** of securities of the **Organization** within the meaning of Section 16(b) of the Securities Exchange Act of 1934, any amendments thereto, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world; or

  (b) based upon, arising from, or in consequence of:

    (i) the committing in fact of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Person**; or

      (ii)    such **Insured Person** having gained in fact any profit, remuneration or advantage to which such **Insured Person** was not legally entitled,

as evidenced by (A) any written statement or written document by any **Insured** or (B) any judgment or ruling in any judicial, administrative or alternative dispute resolution proceeding.

*Applicable To Insuring Clause 3 Only*

8.    The Company shall not be liable under Insuring Clause 3 for **Loss** on account of any **Securities Claim** made against any **Organization**:

    (a)    based upon, arising from, or in consequence of:

        (i)    the committing in fact of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by an **Organization** or by any past, present or future chief financial officer, in-house general counsel, president, chief executive officer or chairperson of an **Organization**; or

        (ii)    such **Organization** having gained in fact any profit, remuneration or advantage to which such **Organization** was not legally entitled,

as evidenced by (A) any written statement or written document by any **Insured** or (B) any judgment or ruling in any judicial, administrative or alternative dispute resolution proceeding; or

    (b)    for any actual or alleged liability of an **Organization** under any contract or agreement that relates to the purchase, sale, or offer to purchase or sell any securities; provided that this Exclusion 8(b) shall not apply to liability that would have attached to such **Organization** in the absence of such contract or agreement.

*Severability of Exclusions*

9.    (a)    No fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of applying the exclusions in Subsection 7 of this coverage section.

    (b)    Only facts pertaining to and knowledge possessed by any past, present, or future chief financial officer, in-house general counsel, president, chief executive officer or chairperson of an **Organization** shall be imputed to such **Organization** for the purpose of applying the exclusions in Subsection 8 of this coverage section.

*Spouses, Estates and Legal Representatives*

10.    Subject otherwise to the General Terms and Conditions and the limitations, conditions, provisions and other terms of this coverage section, coverage shall extend to **Claims** for the **Wrongful Acts** of an **Insured Person** made against:

(a)   the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased or the legal representatives or assigns of such **Insured Person** if such **Insured Person** is incompetent, insolvent or bankrupt; or

(b)   the lawful spouse or **Domestic Partner** of such **Insured Person** solely by reason of such spouse or **Domestic Partner's** status as a spouse or **Domestic Partner**, or such spouse or **Domestic Partner's** ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**.

All terms and conditions of this coverage section, including without limitation the Retention, applicable to **Loss** incurred by the **Insured Persons**, shall also apply to loss incurred by the estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of such **Insured Persons**. The coverage provided by this Subsection 10 shall not apply with respect to any loss arising from an act or omission by an **Insured Person's** estate, heirs, legal representatives, assigns, spouse or **Domestic Partner**.

---

### Coordination With Employment Practices Liability Coverage Section

11.   Any **Loss** otherwise covered by both (i) this coverage section and (ii) any employment practices liability coverage section or policy issued by the Company or by any affiliate of the Company (an "Employment Practices Liability Coverage") first shall be covered as provided in, and shall be subject to the limit of liability, retention and coinsurance percentage applicable to such Employment Practices Liability Coverage. Any remaining **Loss** otherwise covered by this coverage section which is not paid under such Employment Practices Liability Coverage shall be covered as provided in, and shall be subject to the Limit of Liability, Retention and Coinsurance Percentage applicable to this coverage section; provided the Retention applicable to such **Loss** under this coverage section shall be reduced by the amount of **Loss** otherwise covered by this coverage section which is paid by the **Insureds** as the retention under such Employment Practices Liability Coverage.

---

### Extended Reporting Period

12.   If the Company or the **Parent Organization** terminates or does not renew this coverage section, other than termination by the Company for nonpayment upon premium, the **Parent Organization** and the **Insured Persons** shall have the right, upon payment of the additional premium set forth in Item 6(B) of the Declarations for this coverage section, to an extension of the coverage granted by this coverage section for **Claims** that are (i) first made during the period set forth in Item 6(A) of the Declarations for this coverage section (the "Extended Reporting Period") following the effective date of termination or nonrenewal, and (ii) reported to the Company in writing within the time provided in Subsection 15(a) of this coverage section, but only to the extent such **Claims** are for **Wrongful Acts** committed, attempted, or allegedly committed or attempted before the earlier of the effective date of termination or nonrenewal or the date of the first merger, consolidation or acquisition event described in Subsection 21 below. The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew. The right to purchase an extension of coverage as described in this Subsection shall lapse unless written notice of election to purchase the extension, together with payment of the additional premium due, is received by the Company within thirty (30) days after the effective date of termination or nonrenewal. Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Period**. The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period.

---

*Limit of Liability, Retention and Coinsurance*

13.   (a)   The Company's maximum liability for all **Loss** on account of each **Claim**, whether covered under one or more Insuring Clauses, shall be the Limit of Liability set forth in Item 2(A) of the Declarations for this coverage section. The Company's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the **Policy Period**, whether covered under one or more Insuring Clauses, shall be the Limit of Liability for each **Policy Period** set forth in Item 2(B) of the Declarations for this coverage section.

(b)   The Company's maximum aggregate liability under Insuring Clause 4 for all **Investigative Costs** on account of all **Securityholder Derivative Demands** shall be the Sublimit set forth in Item 2(C) of the Declarations for this coverage section. Such Sublimit is part of, and not in addition to, the Limits of Liability set forth in Items 2(A) and 2(B) of the Declarations.

(c)   **Defense Costs** are part of, and not in addition to, the Limits of Liability set forth in Item 2 of the Declarations for this coverage section, and the payment by the Company of **Defense Costs** shall reduce and may exhaust such applicable Limits of Liability.

(d)   The Company's liability under Insuring Clause 2 or 3 shall apply only to that part of covered **Loss** (as determined by any applicable provision in Subsection 17 of this coverage section) on account of each **Claim** which is excess of the applicable Retention set forth in Item 4 of the Declarations for this coverage section. Such Retention shall be depleted only by **Loss** otherwise covered under this coverage section and shall be borne by the **Insureds** uninsured and at their own risk. Except as otherwise provided in Subsection 14, no Retention shall apply to any **Loss** under Insuring Clause 1 or 4.

(e)   If different parts of a single **Claim** are subject to different Retentions, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(f)   To the extent that **Loss** resulting from a **Securities Claim** is covered under Insuring Clause 2 or 3 (as determined by Subsection 17(a) of this coverage section) and is in excess of the applicable Retention, the **Insureds** shall bear uninsured and at their own risk that percentage of such **Loss** specified as the Coinsurance Percentage in Item 3(A) of the Declarations for this coverage section, and the Company's liability shall apply only to the remaining percentage of such **Loss**. To the extent that **Loss** resulting from a **Claim** other than a **Securities Claim** is covered under Insuring Clause 2 or 3 (as determined by Subsection 17(b) of this coverage section) and is in excess of the applicable Retention, the **Insureds** shall bear uninsured and at their own risk that percentage of such **Loss** specified as the Coinsurance Percentage in Item 3(B) of the Declarations for this coverage section, and the Company's liability shall apply only to the remaining percentage of such **Loss**.

(g)   All **Related Claims** shall be treated as a single **Claim** first made on the date the earliest of such **Related Claims** was first made, or on the date the earliest of such **Related Claims** is treated as having been made in accordance with Subsection 15(b) below, regardless of whether such date is before or during the **Policy Period**.

(h)   The limit of liability available during the Extended Reporting Period (if exercised) shall be part of, and not in addition to, the Company's maximum aggregate limit of liability for all **Loss** on account of all **Claims** first made during the immediately preceding **Policy Period**.

---

### Presumptive Indemnification

14.   If the **Organization** fails or refuses, other than for reason of **Financial Impairment**, to indemnify an **Insured Person** for **Loss**, or to advance **Defense Costs** on behalf of an **Insured Person**, to the fullest extent permitted by statutory or common law, then, notwithstanding any other conditions, provisions or terms of this coverage section to the contrary, any payment by the Company of such **Defense Costs** or other **Loss** shall be subject to:

(i)   the applicable Insuring Clause 2 Retention set forth in Item 4 of the Declarations for this coverage section; and

(ii)   the applicable Coinsurance Percentage set forth in Item 3 of the Declarations for this coverage section.

---

### Reporting and Notice

15.   (a)   The **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, give to the Company written notice of any **Claim** as soon as practicable, but in no event later than the earliest of the following dates:

(i)   sixty (60) days after the date on which any **Organization's** chief financial officer, in-house general counsel, risk manager, president, chief executive officer or chairperson first becomes aware that the **Claim** has been made;

(ii)   if this coverage section expires (or is otherwise terminated) without being renewed and if no Extended Reporting Period is purchased, sixty (60) days after the effective date of such expiration or termination; or

(iii)   the expiration date of the Extended Reporting Period, if purchased;

provided that if the Company sends written notice to the **Parent Organization**, at any time before the date set forth in (i) above with respect to any **Claim**, stating that this coverage section is being terminated for nonpayment of premium, the **Insureds** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

(b)   If during the **Policy Period** an **Insured**:

(i)   becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company;

(ii)   receives a written request to toll or waive a statute of limitations applicable to **Wrongful Acts** committed, attempted, or allegedly committed or attempted before or during the **Policy Period** and gives written notice of such request and of such alleged **Wrongful Acts** to the Company; or

(iii)    gives written notice to the Company of a **Securityholder Derivative Demand**,

then any **Claim** subsequently arising from the circumstances referred to in (i) above, from the **Wrongful Acts** referred to in (ii) above, or from the **Securityholder Derivative Demand** referred to in (iii) above, shall be deemed to have been first made during the **Policy Period** in which the written notice described in (i), (ii) or (iii) above was first given by an **Insured** to the Company, provided any such subsequent **Claim** is reported to the Company as set forth in Subsection 15(a) above.  With respect to any such subsequent **Claim**, no coverage under this coverage section shall apply to loss incurred prior to the date such subsequent **Claim** is actually made.

(c)    The **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, give to the Company such information, assistance, and cooperation as the Company may reasonably require, and shall include in any notice under Subsection 15(a) or (b) a description of the **Claim**, circumstances, or **Securityholder Derivative Demand**, the nature of any alleged **Wrongful Acts**, the nature of the alleged or potential damage, the names of all actual or potential claimants, the names of all actual or potential defendants, and the manner in which such **Insured** first became aware of the **Claim**, circumstances, or **Securityholder Derivative Demand**.

## Defense and Settlement

16.    (a)    It shall be the duty of the **Insureds** and not the duty of the Company to defend **Claims** made against the **Insureds**.

(b)    The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent.  The Company shall not be liable for any element of **Loss** incurred, for any obligation assumed, or for any admission made, by any **Insured** without the Company's prior written consent.  Provided the **Insureds** comply with Subsections 16(c) and (d) below, the Company shall not unreasonably withhold any such consent.

(c)    With respect to any **Claim** that appears reasonably likely to be covered in whole or in part under this coverage section, the Company shall have the right and shall be given the opportunity to effectively associate with the **Insureds**, and shall be consulted in advance by the **Insureds**, regarding the investigation, defense and settlement of such **Claim**, including but not limited to selecting appropriate defense counsel and negotiating any settlement.

(d)    The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agree that in the event of a **Claim** the **Insureds** will do nothing that could prejudice the Company's position or its potential or actual rights of recovery.

(e)    Any advancement of **Defense Costs** shall be repaid to the Company by the **Insureds**, severally according to their respective interests, if and to the extent it is determined that such **Defense Costs** are not insured under this coverage section.

## Allocation

17. (a) If in any **Securities Claim** the **Insureds** incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section, the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss as follows:

   (i) The portion, if any, of such amount that is in part covered and in part not covered under Insuring Clause 2 shall be allocated in its entirety to covered **Loss**, subject, however, to the applicable Retention and Coinsurance Percentage set forth in Items 4(C) and 3(A) of the Declarations for this coverage section, respectively; and

   (ii) The portion, if any, of such amount that is in part covered and in part not covered under Insuring Clause 1 or 3 shall be allocated between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the **Insureds** to covered and non-covered matters and, in the event of a settlement in such **Securities Claim**, based also on the relative benefits to the **Insureds** from settlement of the covered matters and from settlement of the non-covered matters; provided that the amount so allocated to covered **Loss** under Insuring Clause 3 shall be subject to the Retention and Coinsurance Percentage set forth in Items 4(C) and 3(A) of the Declarations for this coverage section, respectively.

   The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss. The allocation described in (i) above shall be final and binding on the Company and the **Insureds** under Insuring Clause 2, but shall not apply to any allocation under Insuring Clauses 1 and 3.

   (b) If in any **Claim** other than a **Securities Claim** the **Insured Persons** incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section, either because such **Claim** includes both covered and non-covered matters or because such **Claim** is made against both **Insured Persons** and others (including the **Organization**), the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the parties to covered and non-covered matters and, in the event of a settlement in such **Claim**, based also on the relative benefits to the parties from such settlement. The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss.

   (c) If the **Insureds** and the Company agree on an allocation of **Defense Costs**, the Company shall advance on a current basis **Defense Costs** allocated to the covered **Loss**. If the **Insureds** and the Company cannot agree on an allocation:
   (i) no presumption as to allocation shall exist in any arbitration, suit or other proceeding;

   (ii) the Company shall advance on a current basis **Defense Costs** which the Company believes to be covered under this coverage section until a different allocation is negotiated, arbitrated or judicially determined; and

   (iii) the Company, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the Company, and a third independent arbitrator selected by the first two arbitrators.

(d)     Any negotiated, arbitrated or judicially determined allocation of **Defense Costs** on
account of a **Claim** shall be applied retroactively to all **Defense Costs** on account of
such **Claim**, notwithstanding any prior advancement to the contrary.  Any allocation or
advancement of **Defense Costs** on account of a **Claim** shall not apply to or create any
presumption with respect to the allocation of other **Loss** on account of such **Claim**.

### Other Insurance

18.     If any **Loss** under this coverage section is insured under any other valid insurance
policy(ies), then this coverage section shall cover such **Loss**, subject to its limitations,
conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in
excess of the applicable retention (or deductible) and limit of liability under such other
insurance, whether such other insurance is stated to be primary, contributory, excess,
contingent or otherwise, unless such other insurance is written only as specific excess
insurance over the Limits of Liability provided in this coverage section.  Any payment by
**Insureds** of a retention or deductible under such other insurance shall reduce, by the
amount of such payment which would otherwise have been covered under this coverage
section, the applicable Retention under this coverage section.

### Payment of Loss

19.     In the event payment of **Loss** is due under this coverage section but the amount of such
**Loss** in the aggregate exceeds the remaining available Limit of Liability for this coverage
section, the Company shall:

(a)     first pay such **Loss** for which coverage is provided under Insuring Clause 1 of this
coverage section; then

(b)     to the extent of any remaining amount of the Limit of Liability available after payment
under (a) above, pay such **Loss** for which coverage is provided under any other
Insuring Clause of this coverage section.

Except as otherwise provided in this Subsection 19, the Company may pay covered **Loss** as
it becomes due under this coverage section without regard to the potential for other future
payment obligations under this coverage section.

### Changes in Exposure

Acquisition /Creation of Another Organization

20.     If before or during the **Policy Period** any **Organization**:

(a)     acquires securities or voting rights in another organization or creates another
organization, which as a result of such acquisition or creation becomes a **Subsidiary**;
or

(b)     acquires another organization by merger into or consolidation with an **Organization**
such that the **Organization** is the surviving entity,

such other organization and its **Insured Persons** shall be **Insureds** under this coverage section, but only with respect to **Wrongful Acts** committed, attempted, or allegedly committed or attempted after such acquisition or creation unless the Company agrees, after presentation of a complete application and all other appropriate information, to provide coverage by endorsement for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by such **Insureds** before such acquisition or creation.

If the total assets of any such acquired organization or new **Subsidiary** exceed ten percent (10%) of the total assets of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require and shall pay any reasonable additional premium required by the Company. If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired or created organization and its **Insured Persons** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation. Coverage for any acquired or created organization described in this paragraph, and for the **Insured Persons** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require.

*Acquisition by Another Organization*

21.   If:

(a)   the **Parent Organization** merges into or consolidates with another organization and the **Parent Organization** is not the surviving entity; or

(b)   another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of or to appoint directors or **Managers** of the **Parent Organization**,

coverage under this coverage section shall continue until termination of this coverage section, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by **Insureds** before such merger, consolidation or acquisition. Upon the occurrence of any event described in (a) or (b) of this Subsection 21, the entire premium for this coverage section shall be deemed fully earned.
The **Parent Organization** shall give written notice of such merger, consolidation or acquisition to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such merger, consolidation or acquisition, together with such other information as the Company may require. Upon receipt of such notice and information and at the request of the **Parent Organization**, the Company shall provide to the **Parent Organization** a quotation for an extension of coverage (for such period as may be negotiated between the Company and the **Parent Organization**) with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by **Insureds** before such merger, consolidation or acquisition. Any coverage extension pursuant to such quotation shall be subject to such additional or different terms, conditions and limitations of coverage, and payment of such additional premium, as the Company in its sole discretion may require.

### Cessation of Subsidiary

22.   In the event an organization ceases to be a **Subsidiary** before or during the **Policy Period**,
      coverage with respect to such **Subsidiary** and its **Insured Persons** shall continue until
      termination of this coverage section, but only with respect to **Claims** for **Wrongful Acts**
      committed, attempted, or allegedly committed or attempted while such organization was a
      **Subsidiary**.

### Related Entity Public Offering

23.   If any **Organization** files or causes to be filed, with the United States Securities and
      Exchange Commission or an equivalent agency or government department in any country
      other than the United States of America, any registration statement in contemplation of a
      public offering of equity securities by any entity other than the **Parent Organization**
      (irrespective of whether such public offering is an initial public offering or a secondary or other
      offering subsequent to an initial public offering), then the Company shall not be liable for **Loss**
      on account of any **Claim** based upon, arising from, or in consequence of such registration
      statement or the sale, offer to sell, distribution or issuance of any securities pursuant to such
      registration statement, unless (i) the Company receives written notice at least thirty (30) days
      prior to the effective date of such registration statement providing full details of the
      contemplated offering, and (ii) the Company, in its sole discretion, agrees by written
      endorsement to this coverage section to provide coverage for such **Claims** upon such terms
      and conditions, subject to such limitations and other provisions, and for such additional
      premium as the Company may require. If the Company in its sole discretion agrees to
      provide coverage for such **Claims**, the additional premium specified by the Company shall be
      payable to the Company in full not later than the date on which such registration statement
      becomes effective.

### Representations and Severability

24.   In issuing this coverage section the Company has relied upon the statements,
      representations and information in the **Application**. All of the **Insureds** acknowledge and
      agree that all such statements, representations and information (i) are true and accurate,
      (ii) were made or provided in order to induce the Company to issue this coverage section,
      and (iii) are material to the Company's acceptance of the risk to which this coverage
      section applies.

      In the event that any of the statements, representations or information in the **Application**
      are not true and accurate, this coverage section shall be void with respect to (i) any
      **Insured** who knew as of the effective date of the **Application** the facts that were not
      truthfully and accurately disclosed (whether or not the **Insured** knew of such untruthful
      disclosure in the **Application**) or to whom knowledge of such facts is imputed, and (ii) the
      **Organization** under Insuring Clause 2 to the extent it indemnifies an **Insured Person** who
      had such actual or imputed knowledge. For purposes of the preceding sentence:

      (a)   the knowledge of any **Insured Person** who is a past, present or future chief financial
            officer, in-house general counsel, chief executive officer, president or chairperson of
            an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**;

(b)     the knowledge of the person(s) who signed the **Application** for this coverage section shall be imputed to all of the **Insureds**; and

(c)     except as provided in (a) above, the knowledge of an **Insured Person** who did not sign the **Application** shall not be imputed to any other **Insured**.

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012          Federal Insurance Company

                                             Endorsement/Rider No. 1

                                             To be attached to and
                                             form a part of Policy No. 8223-7519

Issued to:  Exide Technologies

---

### AMEND CHANGES IN EXPOSURE ENDORSEMENT

In consideration of the premium charged, it is agreed that the second full paragraph of Subsection 20 of this coverage section, Changes in Exposure: Acquisition/Creation of Another Organization, is amended to read in its entirety as follows:

If the total assets of any such acquired organization or new **Subsidiary** exceed twenty percent (20%) of the total assets of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require and shall pay any reasonable additional premium required by the Company.  If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired or created organization and its **Insured Persons** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation.  Coverage for any acquired or created organization described in this paragraph, and for the **Insured Persons** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012

Federal Insurance Company

Endorsement/Rider No. 2

To be attached to and
form a part of Policy No. 8223-7519

Issued to: Exide Technologies

---

AMEND DEFINITION OF LOSS TO INCLUDE COVERAGE FOR MULTIPLIED DAMAGES ENDORSEMENT

In consideration of the premium charged, it is agreed that:

The definition of **Loss** set forth in Section 5., Definitions, of this coverage section is amended as follows:

(i)     the first paragraph (a) of the definition of **Loss** is amended to read in its entirety as follows:

(a)     the amount that any **Insured Person** (for purposes of Insuring Clauses 1 and 2) or the **Organization** (for purposes of Insuring Clause 3) becomes legally obligated to pay on account of any covered **Claim**, including but not limited to damages (including, punitive, exemplary damages or multiplied damages, if and to the extent that such punitive, exemplary or multiplied damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant **Insureds**, to the Company, or to the **Claim** giving rise to the damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**; or

(ii)    paragraphs (d) and (e) of the definition of **Loss** are amended to read in their entirety as follows:

(d)     taxes, fines or penalties, except as provided above with respect to punitive, exemplary or multiplied damages;

(e)     any amount not insurable under the law pursuant to which this coverage section is construed, except as provided above with respect to punitive, exemplary or multiplied damages;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability
Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012

Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8223-7519

Issued to: Exide Technologies

---

## EXTRADITION COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection 5., Definitions, of this coverage
section is amended as follows:

(1)     The term **Claim** is amended to add the following:

      **Claim**, when used in reference to the coverage provided by Insuring Clause 1 or 2, also means:

         (i)    an official request for **Extradition** (as defined below) of an **Insured Person**; or
         (ii)   the execution of a warrant for the arrest of an **Insured Person** where such
               execution is an element of **Extradition**.

(2)     The term **Defense Costs** is amended to add the following:

      **Defense Costs** also means that part of **Loss** consisting of reasonable costs, charges, fees
      (including but not limited to attorney's fees and experts' fees) and expenses incurred through the
      use of legal counsel and consented to by the Company resulting from an **Insured Person**
      lawfully:

         (i)    opposing, challenging, resisting or defending against any request for or any effort
               to obtain the **Extradition** of such **Insured Person**; or
         (ii)   appealing any order or other grant of **Extradition** of such **Insured Person**.

(3)     For purposes of this endorsement, the term **Extradition** means any formal process by which an
      **Insured Person** located in any country is surrendered to any other country for trial or otherwise
      to answer any criminal accusation.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the
terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012

Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8223-7519

Issued to:  Exide Technologies

---

AMEND CONDUCT EXCLUSIONS AND SECURITIES CLAIM ALLOCATION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Subsection 7., Exclusions Applicable to Insuring Clauses 1 and 2 Only, of this coverage section is deleted and replaced with the following:

**Applicable To Insuring Clause 1 Only:**

7.      The Company shall not be liable under Insuring Clause 1 for **Loss** on account of any **Claim** made against any **Insured Person**:

(a)     based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Person**, if a final, non-appealable adjudication in any underlying action establishes such a deliberately fraudulent act or omission or willful violation; or

(b)     based upon, arising from, or in consequence of such **Insured Person** having gained any profit, remuneration or other advantage to which such **Insured Person** was not legally entitled, if a final, non-appealable adjudication in any underlying action establishes the gaining of such a profit, remuneration or advantage.

(2)     Subsection 8., Exclusions Applicable to Insuring Clause 3 Only, of this coverage section is deleted and replaced with the following:

**Applicable To Insuring Clause 3 Only:**

8.      The Company shall not be liable under Insuring Clause 3 for **Loss** on account of any **Securities Claim** made against any **Organization**:

(a)     based upon, arising from or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Organization** or by any past, present or future chief financial officer, chief executive officer or chief operating officer of such **Organization**, if a final, non-appealable adjudication in any underlying action establishes such a deliberately fraudulent act or omission or willful violation; or

(b)     based upon, arising from, or in consequence of such **Organization**, or any past, present or future chief financial officer, chief executive officer or chief operating officer of such **Organization** having gained any profit, remuneration or other advantage to which any such individual or such **Organization** was not legally entitled, if a final, non-appealable

adjudication in any underlying action establishes the gaining of such a profit, remuneration or advantage; or

(c)    for any actual or alleged liability of an **Organization** under any contract or agreement that relates to the purchase, sale, or offer to purchase or sell any securities; provided that this Exclusion 8(c) shall not apply to liability that would have attached to such **Organization** in the absence of such contract or agreement.

(3)    With respect to Exclusions 7. and 8., as amended above, the term "action", as used therein, shall not include any declaratory proceeding or action brought by or against the Company.

(4)    Subsection 9., Severability of the Exclusions, of this coverage section is deleted and replaced with the following:

9.    Severability of Exclusions

(a)    No conduct pertaining to any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of applying the exclusions in Subsection 7 of this coverage section.

(b)    Conduct pertaining to any past, present, or future chief financial officer, chief executive officer or chief operating officer of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries** for the purpose of applying the exclusions in Subsection 8 of this coverage section.

(5)    Paragraph (a) of Subsection 17., Allocation, of this coverage section is amended to read in its entirety as follows:

If in any **Securities Claim** the **Insureds** incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section because such **Securities Claim** includes both covered and non-covered matters, the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the **Insureds** to the covered and non-covered matters and, in the event of a settlement in such **Securities Claim**, based also on the relative benefits to the **Insureds** from settlement of the covered and the non-covered matters. The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss.


The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.



_____
Authorized Representative

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012

Federal Insurance Company

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 8223-7519

Issued to:  Exide Technologies

---

AMEND DEFENSE AND SETTLEMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that paragraph (e) of Subsection 16., Defense and Settlement, of this coverage section is amended to include the following:

The Company will not seek repayment from an **Insured Person** of advanced **Defense Costs** that are uninsured pursuant to Exclusion 7 of this coverage section unless the applicable determination standard set forth in such Exclusion (i.e., in-fact, final adjudication, alternative dispute resolution or other) or any applicable endorsement thereto has been met.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012

Federal Insurance Company

Endorsement/Rider No. 6

To be attached to and
form a part of Policy No. 8223-7519

Issued to:  Exide Technologies

---

AMEND REPRESENTATIONS AND SEVERABILITY WITH ABSOLUTE NON-RESCINDABLE
COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Subsection 24, Representations and Severability, of this coverage section is deleted and replaced with the following:

(a)  The **Insureds** acknowledge and agree that, in issuing this coverage section, the Company has relied on all statements, representations and information contained in the **Application** as being true and accurate.  All such statements, representations and information are the basis for this coverage section and are to be considered incorporated into this coverage section.

(b)  Such **Application** shall be construed as a separate application for coverage by each of the **Insured Persons**.  With respect to any statements, representations and information contained in the **Application**, no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

However, in the event that such **Application**, contains any misrepresentations made with the actual intent to deceive or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Company under this coverage section, then no coverage shall be afforded for any **Claim** based upon, arising from or in consequence of any such misrepresentations under:

(i)     Insuring Clause 1 of this coverage section, with respect to any **Insured Person** who knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations);

(ii)    Insuring Clause 2 of this coverage section, with respect to any **Organization** to the extent it indemnifies any **Insured Person** in subsection (i) above; and

(iii)   Insuring Clause 3 or 4 of this coverage section, with respect to any **Organization** if any past or present chief executive officer or chief financial officer of the **Parent Organization** knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations);

(2)     The following Subsection is added to this coverage section as follows:

**_Non-Rescindable_**

The Company shall not be entitled under any circumstances to void or rescind this coverage section with respect to any **Insured**.

Nothing contained herein shall limit or waive any other rights or remedies available to the Company.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section
(Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012

Federal Insurance Company

Endorsement/Rider No. 7

To be attached to and
form a part of Policy No. 8223-7519

Issued to: Exide Technologies

---

AMEND BI/PD EXCLUSION (CORPORATE MANSLAUGHTER) ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion 6(e) of this coverage section is deleted and
replaced with the following:

(e)     for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or
        damage to or destruction of any tangible property including loss of use thereof whether or not it is
        damaged or destroyed; provided that this Exclusion 6(e) shall not apply to:

    (i)     mental anguish or emotional distress for which a claimant seeks compensation in an
            employment **Claim**; or

    (ii)    **Defense Costs** on account of a criminal proceeding for manslaughter (or any other
            similar offense);

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012

Federal Insurance Company

Endorsement/Rider No. 8

To be attached to and
form a part of Policy No. 8223-7519

Issued to: Exide Technologies

---

AMEND DEFINITION OF CLAIM ENDORSEMENT

In consideration of the premium charged, it is agreed that sections (1) and (2) of the definition of **Claim**, as set forth in Subsection 5 of this coverage section, are deleted and replaced with the following:

**Claim** means:

(1)    when used in reference to the coverage provided by Insuring Clauses 1 or 2:

    (a)    a written demand for monetary or non-monetary relief, including injunctive relief;

    (b)    a civil proceeding commenced by the service of a complaint or similar pleading;

    (c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document;

    (d)    a criminal proceeding commenced by: (i) an arrest, or (ii) return of an indictment, information or similar document;

    (e)    an official request for extradition, including the execution of an arrest warrant where such execution is an element of the request for extradition;

    (f)    an arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,

    against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom;

    (g)    a civil, criminal, administrative or regulatory investigation or interview of an **Insured Person** for a **Wrongful Act** once such **Insured Person** is identified in writing by any investigating authority as a target of such investigation or interview, including when such **Insured Person** is served with a Wells Notice, target letter or similar document;

(2)    when used in reference to the coverage provided by Insuring Clause 3:

    (a)    a written demand for monetary or non-monetary relief, including injunctive relief;

    (b)    a civil proceeding commenced by the service of a complaint or similar pleading;

(c)     a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document, but only while such proceeding is also pending against an **Insured Person**;

(d)     a criminal proceeding commenced by the return of an indictment, information or similar document; or

(e)     an arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,

against an **Organization** for a **Wrongful Act**, including any appeal therefrom; or

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012

Federal Insurance Company

Endorsement/Rider No. 9

To be attached to and
form a part of Policy No. 8223-7519

Issued to:  Exide Technologies

---

PRIORITY OF PAYMENTS ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection 19, Payment of Loss, of this coverage section is deleted and replaced with the following:

19.      In the event of **Loss** arising from a covered **Claim** for which payment is concurrently due under more than one of the insuring clauses of this coverage section, the Company shall:

   (a)      first, pay **Loss** for which coverage is provided under Insuring Clause 1 of this coverage section; then

   (b)      only after payment of **Loss** has been made pursuant to (a) above, with respect to whatever remaining amount of the Limit of Liability is available after such payment, at the written request of the current and active Chief Executive Officer of the **Parent Organization**, either pay or withhold payment of such other **Loss** for which coverage is provided under Insuring Clause 2 of this coverage section; and then

   (c)      only after payment of **Loss** has been made pursuant to (a) and (b) above, with respect to whatever remaining amount of the Limit of Liability is available after such payment, at the written request of the current and active Chief Executive Officer of the **Parent Organization**, either pay or withhold payment of such other **Loss** for which coverage is provided under Insuring Clauses 3 and 4 of this coverage section.

In the event the Company withholds payment pursuant to (b) and/or (c) above, then the Company shall, at such time and in such manner as shall be set forth in written instructions of the current and active Chief Executive Officer of the **Parent Organization**, remit such payment to an **Organization** or directly to or on behalf of an **Insured Person**.

The bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the Company of any of its obligations to prioritize payment of covered **Loss** under this coverage section pursuant to this endorsement.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012

Federal Insurance Company

Endorsement/Rider No. 10

To be attached to and
form a part of Policy No. 8223-7519

Issued to: Exide Technologies

---

AMEND SUBSECTION 9(b), SEVERABILITY OF EXCLUSIONS, ENDORSEMENT

In consideration of the premium charged, it is agreed that paragraph (b) of Subsection 9., Severability of Exclusions, of this coverage section is deleted and replaced with the following:

(b)     Only facts pertaining to and knowledge possessed by any past, present, or future chief financial officer or chief executive officer of an **Organization** shall be imputed to such **Organization** for the purpose of applying the exclusions in Subsection 8 of this coverage section.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012

Federal Insurance Company

Endorsement/Rider No. 11

To be attached to and
form a part of Policy No. 8223-7519

Issued to:  Exide Technologies

EXECUTIVE PROTECTION ENHANCEMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)   **AMEND DEFINITIONS**

Subsection 5, Definitions, of this coverage section is amended as follows:

(a)   Amend Application

The definition of **Application** is deleted and replaced with the following:

**Application** means:

(1)   any application given to the Company for this coverage section, including any attachments, or any written information or documentation provided to the Company by or on behalf of an **Insured** for the purposes of the Company's underwriting of this coverage section;

(2)   all publicly available documents filed by an **Organization** with the Securities and Exchange Commission during the twelve (12) months preceding this policy's inception date; and

(3)   if applicable, any written representation attesting to no known losses provided to the Company within the past three (3) years in connection with any coverage section or policy of which this coverage section is a renewal or replacement.

(b)   Amend Claim

The definition of **Claim** is amended by adding the following:

when used in reference to the coverage provided by Insuring Clauses 1 or 2, **Claim** also includes:

(i)   the service of a subpoena or other similar written request compelling witness testimony or document production upon an **Insured Person** in connection with any matters described above against any **Insured Person** or an **Organization** for a **Wrongful Act**, in which case, the Company shall pay on behalf of such **Insured Person Defense Costs** and any reasonable and necessary costs, fees and expenses incurred solely by such **Insured Person** in responding to such subpoena or in producing the documentation demanded by such subpoena or document production request;

(ii) a request by an **Enforcement Unit** for an **Insured Person** to appear for an interview or meeting with respect to the **Insured Capacity** of such **Insured Person** or an **Organization's** business activities; or

(iii) in connection with an inquiry or investigation by an **Enforcement Unit** or a securityholder derivative demand, a request by an **Organization** for an **Insured Person** to appear for an interview or meeting with respect to the **Insured Capacity** of such **Insured Person** or an **Organization's** business activities,

provided that, with respect to:

(A) subparagraph (i) above, such **Claim** shall be deemed to have been first made when such subpoena or other similar written request is served upon such **Insured Person**;

(B) subparagraph (ii) and (iii) above:

    1. any such request shall not be deemed a **Claim** first made during the **Policy Period** until such **Claim** is reported pursuant to Subsection 15, Reporting and Notice, of this coverage section; and

    2. the Company shall not pay for any amount incurred as a result of any document production demand or discovery request; and

(C) subparagraph (i), (ii) and (iii) above, the Company shall not pay for any amount incurred as a result of any routine or regularly scheduled **Enforcement Unit** oversight, compliance, audit, inspection or examination.

(c) <u>Add Enforcement Unit</u>

The term **Enforcement Unit** means any federal, state, local or foreign law enforcement or governmental authority (including, the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any attorney general) or the enforcement unit of any securities exchange or similar self-regulatory body.

(d) <u>Delete Investigative Costs</u>

The term **Investigative Costs** is deleted. Accordingly, all references to **Investigative Costs** are deleted from this coverage section.

(e) <u>Amend Loss</u>

The term **Loss** is deleted and replaced with the following:

**Loss** means the amount which any **Insured** becomes legally obligated to pay as a result of any **Claim**, including:

(1) compensatory damages;

(2) punitive, exemplary or multiplied damages, fines or penalties (including civil penalties assessed against an **Insured Person** pursuant to 15 U.S.C. §78dd-2(g)(2)(B) (the Foreign Corrupt Practices Act)), if and to the extent that any such damages, fines or penalties are insurable under the law of the jurisdiction most favorable to the insurability of such damages, fines or penalties, provided such jurisdiction has a substantial relationship to the relevant **Insureds**, to the Company, or to the **Claim** giving rise to such damages, fines or penalties;

(3) judgments, including pre-judgment and post-judgment interest;

(4) settlements;

(5) **Defense Costs**; and

(6) any amount attributable to violations of Sections 11, 12 or 15 of the Securities Act of 1933, as amended, to the extent such amount is insurable under the law pursuant to which this coverage section is construed;

**Loss** does not include any portion of such amount that constitutes any:

(a) cost incurred by the **Organization** to comply with any order for non-monetary or injunctive relief, or to comply with an agreement to provide such relief;

(b) amount not insurable under the law pursuant to which this coverage section is construed; provided that the Company shall not assert that any amount attributable to violations of Sections 11, 12 or 15 of the Securities Act of 1933, as amended, is subject to this paragraph (b), unless such amount is determined to be uninsurable in a final, non-appealable adjudication (other than a declaratory or equivalent proceeding or action brought by or against the Company);

(c) amount that represents or is substantially equivalent to an increase in the consideration paid (or proposed to be paid) by an **Organization** in connection with its purchase of any securities or assets; or

(d) taxes; except, solely for the purposes of Insuring Clause 1, any tax imposed upon an **Insured Person** in his or her capacity as such in connection with any bankruptcy, receivership, conservatorship, or liquidation of an **Organization**, to the extent that such tax is insurable under the law pursuant to which this coverage section is construed; or

(e) cost incurred in cleaning-up, removing, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for, or monitoring **Pollutants**.

(f) Amend Pollutants

The term **Pollutants** is deleted and replaced with the following:

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, asbestos products or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(g) Delete Securityholder Derivative Demand

The term **Securityholder Derivative Demand** is deleted and all references to **Securityholder Derivative Demand** are deleted from this coverage section.

(h) Add Securityholder Derivative Demand Evaluation Costs

The term **Securityholder Derivative Demand Evaluation Costs** is added as follows:

**Securityholder Derivative Demand Evaluation Costs** means reasonable costs, fees and expenses (other than regular or overtime wages, salaries, fees, or benefits of the directors, officers or employees of the **Organization**) incurred by the **Organization** (including its Board of Directors or any committee of its Board of Directors) prior to a **Claim** solely with respect to any evaluation required to determine whether it is in the best interest of the **Organization** to prosecute the claims alleged in a securityholder derivative demand, but in no event shall **Securityholder Derivative Demand Evaluation Costs** include any costs, fees or expenses incurred in a **Securities Claim**.

(2)   **AMEND EXCLUSIONS**

Subsection 6, Exclusions Applicable To All Insuring Clauses, of this coverage section is amended as follows:

(a)   Amend Prior Notice

Exclusion 6(a) is amended by deleting and replacing the word "given" with the word "accepted".

(b)   Amend Insured v. Insured

Exclusion 6(c) is deleted and replaced with the following:

(c)   brought by an **Organization** against:

(i)   any other **Organization**; or

(ii)   an **Insured Person** of such **Organization**, provided that this paragraph (c)(ii) shall not apply to any **Claim** brought:

(A)   outside the United States of America or Canada;

(B)   in the event of **Financial Impairment** of the **Organization**;

(C)   as a securityholder derivative action; or

(D)   while such **Insured Person** is no longer acting in an **Insured Capacity**.

(c)   Delete Pollution Exclusion

Exclusion 6(d) is deleted.

(3)   **DELETE PRESUMPTIVE INDEMNIFICATION**

Subsection 14, Presumptive Indemnification, of this coverage section is deleted.

(4)   **AMEND REPORTING AND NOTICE**

Subsection 15, Reporting and Notice, of this coverage section is amended as follows:

(a)   Paragraph (a) is deleted and replaced with the following:

(a)   The **Insureds** shall, as a condition precedent to exercising any right to coverage under this policy, give to the Company written notice of any **Claim** no later than:

(i)   if this coverage section expires and is renewed with the Company, one hundred and eighty (180) days after such expiration; provided that, if the **Parent Organization** can prove to the Company's satisfaction that it was not reasonably possible for the **Insureds** to give such notice within the one hundred and eighty (180) day time period and that subsequent notice was given as soon as reasonably possible thereafter, the Company shall waive the foregoing time period;

(ii)   if this coverage section expires (or is otherwise terminated) without being renewed with the Company and if no Extended Reporting Period is purchased, sixty (60) days after the effective date of such expiration or termination; or

(iii)   the expiration date of the Extended Reporting Period, if purchased;

provided that, if the Company sends written notice to the **Parent Organization** stating that this coverage section is being terminated for nonpayment of premium, the **Insureds** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

(b) The lead-in to Paragraph (b) is deleted and replaced with the following:

    (b) If during the **Policy Period** or the Extended Reporting Period (if exercised) an **Insured Person** or **Organization**:

(c) The reference to "as set forth in Subsection 15(a) above" in paragraph (b) is deleted and replaced with 'ho later than one hundred and eighty (180) days after the in-house general counsel or risk manager of the **Parent Organization** becomes aware of such **Claim**".

(5)    **AMEND DEFENSE AND SETTLEMENT**

Subsection 16, Defense and Settlement, of this coverage section is amended as follows:

(a) <u>Loss Incurred With Prior Consent</u>

Paragraph (b) is amended to include the following after the second sentence:

Accordingly, the Company shall only be liable for **Loss** incurred with the Company's prior written consent. However, the Company may, in its sole discretion, waive the foregoing requirement with respect to **Loss** incurred within thirty (30) days prior to the reporting of a **Claim** pursuant to Subsection 15, Reporting and Notice, of this coverage section.

(b) <u>Advancement of Defense Costs</u>

Paragraph (e) is deleted and replaced with the following:

    (e) **Defense Costs** on account of a **Claim** reported pursuant to Subsection 15, Reporting and Notice, of this coverage section shall be advanced on a current basis, but no later than ninety (90) days after receipt by the Company of invoices or bills detailing such **Defense Costs** and all other information requested by the Company with respect to such invoices or bills. The Company shall not seek repayment from an **Insured Person** of advanced **Defense Costs** that are uninsured pursuant to Exclusion 7 of this coverage section unless the applicable determination standard (i.e. final, non-appealable adjudication; or other) has been met and all other provisions of this coverage section applicable to Exclusion 7 have been applied.

Paragraph (f) is added as follows:

    (f) If an **Organization** refuses in writing, or fails within sixty (60) days of an **Insured Person's** written request for indemnification, to advance, pay or indemnify an **Insured Person** for **Loss** on account of a **Claim**, then, upon the **Insured Person** reporting the **Claim** pursuant to Subsection 15, Reporting and Notice, of this coverage section the Company shall advance **Defense Costs** until such time that the **Organization** accepts the **Insured Person's** request for indemnification or the applicable Retention has been satisfied. Any advancement of **Defense Costs** by the Company shall reduce the Limit of Liability set forth in Item 2(B) of the Declarations.

(c) <u>Settlement Within the Retention Without Prior Consent</u>

Paragraph (g) is added as follows:

(g) Notwithstanding paragraph (b) above, with respect to any **Claim**, reported pursuant to Subsection 15, Reporting and Notice, of this coverage section, the **Insureds** may settle a **Claim** (inclusive of **Defense Costs**) without the Company's prior consent if the amount of such settlement does not exceed the amount of the applicable Retention. However, the Company shall not be liable for any settlement or **Defense Costs** in excess of the amount of the applicable Retention to which it has not consented in writing. The **Insureds** shall submit to the Company all requested information with respect to any **Claim** settled pursuant to this paragraph (g) upon either the underwriting of a renewal of this coverage section or upon expiration of this coverage section, whichever first occurs.

## (6) AMEND OTHER INSURANCE

Subsection 18, Other Insurance, of this coverage section is amended as follows:

(a) The reference to "valid insurance" in the first sentence of this Subsection 18 is replaced with "valid and collectible insurance".

(b) The following sentence is added at the end of this Subsection 18 as a separate paragraph:

In addition to, and not in limitation of, the above paragraph:

This coverage section is specifically excess of and shall not contribute with any insurance policy for pollution liability or environmental liability, including any general liability policy.

## (7) DELETE INSURING CLAUSE 4

Insuring Clause 4, Securityholder Derivative Demand Coverage, of this coverage section is deleted.

## (8) ADD SECURITYHOLDER DERIVATIVE DEMAND EVALUATION COVERAGE

The following Subsection is added to this coverage section:

SECURITYHOLDER DERIVATIVE DEMAND EVALUATION COVERAGE

The Company shall pay, on behalf of the **Organization**, **Securityholder Derivative Demand Evaluation Costs** incurred with the Company's prior consent which the **Organization** becomes legally obligated to pay on account of any securityholder derivative demand that is first made during the **Policy Period**, or, if exercised, during the Extended Reporting Period, for **Wrongful Acts** by **Insured Persons** before or during the **Policy Period** in an amount not to exceed $500,000 which amount is part of, and not in addition to, the Limit of Liability as set forth in Item 2(B) of the Declarations of this coverage section and no Retention shall apply to such amount.

## (9) INDEMNIFICATION AND SUBROGATION

Solely with respect to this coverage section, Subsection 7, Subrogation, of the General Terms and Conditions Section of this policy is deemed deleted and replaced with the following:

This policy has been issued to the **Parent Organization** with the understanding and agreement that each **Organization** agrees to fulfill its indemnification obligations to the fullest extent permitted by: (i) any statutory or common law, or (ii) any contract or agreement providing an indemnification obligation exceeding any such statutory or common law, to any **Insured Person**. If the Company pays as **Loss** any indemnification owed to any **Insured Person** by any **Organization**, the Company does not waive or compromise any of its rights to recover such **Loss** from such **Organization**.

In the event of any payment of **Loss** under this policy, the Company shall be subrogated to the extent of such payment of **Loss** to all of the **Insureds'** rights of recovery, including any such right

to indemnification from any **Organization**, other insurance carrier or other source.  As a condition precedent to the Company's payment of any **Loss** under this policy, the **Insureds** agree to execute all papers reasonably required and take all reasonable actions to secure and preserve the Company's rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insureds**, including any action against any **Organization** for indemnification.

(10)  **CANCELLATION/EXTENDED REPORTING TIME PERIOD LIBERALIZATION**

In the event that any time period relating to notice of cancellation or extended reporting period election provided under this coverage section is less than any such time period required by applicable state law, the Company shall apply the applicable state law.

(11)  **POLICY LIBERALIZATION**

In the event that any provision of this endorsement conflicts in any way with a provision of another endorsement of this coverage section, to the extent allowed by applicable law, the **Parent Organization** may determine, in it sole discretion, if such provision in this endorsement or such other endorsement takes precedence in determining the application of such provision under this coverage section.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012

Federal Insurance Company

Endorsement/Rider No. 12

To be attached to and
form a part of Policy No. 8223-7519

Issued to: Exide Technologies

---

AMEND DEFENSE AND SETTLEMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that paragraph (e) of Subsection 16., Defense and Settlement, of this coverage section is amended to include the following:

> With respect to any **Defense Costs** for which this coverage section provides coverage, the Company shall, upon request from an **Insured**, advance **Defense Costs** on a current basis, but not later than sixty (60) days after receipt by the Company of invoices or bills detailing such **Defense Costs** and all other information requested by the Company with respect to such invoices or bills.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012

Federal Insurance Company

Endorsement/Rider No. 13

To be attached to and
form a part of Policy No. 8223-7519

Issued to:  Exide Technologies

---

DODD FRANK 954 AND SOX 304 ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)  Subparagraph (b) of the definition of **Wrongful Act** as defined in Subsection 5, Definitions, of this coverage section is deleted and replaced with the following:

   (b)  any other matter claimed against an **Insured Person** solely by reason of his or her serving in an **Insured Capacity**, including any matter claimed pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.

(2)  The definition of **Loss**, as defined in Subsection 5, Definitions, of this coverage section shall not include any portion of an amount reimbursed to, or recovered by, an **Organization** or any other party on behalf of the **Organization**, pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.

(3)  Exclusion 6(c) shall not apply to **Loss** on account of any **Claim** brought by an **Organization** against an **Insured Person** of such **Organization** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.

(4)  Solely with respect to any **Claim** brought by an **Organization** against an **Insured Person** of such **Organization** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002:

   The definition of **Defense Costs**, as defined in Subsection 5, Definitions, of this coverage section is amended to include any costs under Insuring Clause 1 that are deemed by the Company, in its sole discretion, to be reasonable and necessary costs, expenses and fees incurred by the Chief Executive Officer or Chief Financial Officer of an **Organization** solely to facilitate a reimbursement which such officer is required to make pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 (including the premium or origination fee for a bond or loan).

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement:  May 5, 2012          Company:  Federal Insurance Company

Endorsement No. 14

To be attached to and
form a part of Policy No. 8223-7519

Issued to:  Exide Technologies

---

**GEORGIA AMENDATORY ENDORSEMENT**
**TO THE EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY COVERAGE SECTION**

In consideration of the premium charged, it is agreed that:

1.    The definition of "Application" set forth in Subsection 5. Definitions of the Executive Liability and Entity Securities Liability Coverage Section is amended by deleting the period at the end of the last sentence of the second paragraph thereof and adding the following:

"; provided that, within thirty (30) days after receipt of a written demand by or on behalf of the Insured, the Company shall provide the Insured with a copy of the Application, reproduced by any legible means."

2.    Upon cancellation or non-renewal of the Executive Liability and Entity Securities Liability Coverage Section for any reason other than nonpayment of premium, the Company will automatically provide an Extended Reporting Period for thirty (30) days after the effective date of termination, provided that such automatic Extended Reporting Period will not become effective unless all premiums, deductibles and co-insurance amounts owed under the Policy are paid. During such automatic Extended Reporting Period, coverage otherwise afforded by the Executive Liability and Entity Securities Liability Coverage Section will be extended to apply to Loss from Claims first made during such automatic Extended Reporting Period but only for Wrongful Acts committed, attempted, or allegedly committed or attempted before the earlier of the effective date of termination or nonrenewal or the date of the first merger, consolidation or acquisition event described in Subsection 21 below.  Such thirty (30) day automatic Extended Reporting Period shall be deemed a part of, and not in addition to, any additional Extended Reporting Period purchased by the Parent Organization.

3.    Any Extended Reporting Period which the Parent Organization and the Insured Persons have the right to purchase under Subsection 12. Extended Reporting Period of the Executive Liability and Entity Securities Liability Coverage Section shall be for a period of one (1) year or such other period as the Parent Organization or the Insured Persons and the Company agree upon.

4.    The second paragraph of Subsection 24. Representations and Severability of the Executive Liability and Entity Securities Liability Coverage Section is amended by replacing the phrase: "In the event that any of the statements, representations or information in the Application are not true and accurate," with the following:

"In the event that any of the statements, representations or information in the Application are:

(a)     fraudulent;

(b)     material either to the acceptance of the risk or to the hazard assumed by the Company; or

(c)     the Company in good faith would either not have issued this policy, or would not have issued this policy in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the Company as required either by the Application for this policy or otherwise, then"

The policy is deemed to be amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the policy or any endorsement to the policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such policy or endorsement provisions comply with the applicable insurance laws of the state of Georgia.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012

Federal Insurance Company

Endorsement/Rider No. 15

To be attached to and
form a part of Policy No. 8223-7519

Issued to: Exide Technologies

---

BLANKET 501(C)(3) DOUBLE EXCESS OUTSIDE DIRECTORSHIP LIABILITY ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The definition of **Insured Capacity** in Subsection 5., Definitions, of this coverage section is deleted and replaced with the following:

   **Insured Capacity** means the position or capacity of an **Insured Person** that causes him or her to meet the definition of **Insured Person** set forth in this coverage section.  **Insured Capacity** shall include an **Outside Directorship**.

   Except as specifically provided for an **Outside Directorship**, **Insured Capacity** does not include any position or capacity held by an **Insured Person** in any organization other than the **Organization**, even if the **Organization** directed or requested the **Insured Person** to serve in such position or capacity in such other organization.

(2)     The following definitions are added to Subsection 5., Definitions, of this coverage section:

   **Outside Directorship** means a position held by an **Insured Person** (other than **Insured Person** described in paragraph (c) of the definition of **Insured Person**), at the specific request or direction of the **Organization**, as a director, officer, trustee, governor or equivalent executive of an **Outside Entity**.

   **Outside Entity** means any non-profit corporation, community chest, fund organization or foundation exempt from federal income tax as any organization described in Section 501(c)(3), Internal Revenue Code of 1986, as amended, that is not an **Organization**.

(3)     The Company shall not be liable for **Loss** on account of any **Claim** against an **Insured Person** for **Wrongful Acts** of such **Insured Person** in an **Outside Directorship**, if such **Claim** is brought or maintained by or on behalf of (i) an **Outside Entity** or (ii) any director, officer, trustee, governor or equivalent executive of an **Outside Entity** in any capacity; this exclusion shall not, however, apply to:

   (a)     a **Claim** brought or maintained derivatively on behalf of an **Outside Entity** by one or more securityholders of the **Outside Entity** who are not directors, officers, trustees, governors or equivalent executives of the **Outside Entity**, provided that such **Claim** is

brought and maintained without any active assistance or participation of, or solicitation by, any director, officer, trustee, governor or equivalent executive of the **Outside Entity**; or

    (b)    an employment **Claim** brought or maintained by or on behalf of a director, officer, trustee, governor or equivalent executive of an **Outside Entity** who is not an **Insured Person**.

(4)    Exclusion 6(g) shall not apply to **Claims** for **Wrongful Acts** of an **Insured Person** in an **Outside Directorship**.

(5)    The Company shall not be liable for **Loss** on account of any **Claim** that is for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by such **Insured Person** before beginning to serve in the **Outside Directorship** or after ceasing to serve in the **Outside Directorship**.

(6)    Subsection 18., Other Insurance, of this coverage section is amended as follows:

    (a)    The heading "*Other Insurance*" is deleted and replaced with "*Other Insurance and Indemnity*".

    (b)    The following paragraph is added to the end thereof:

    Without in any way limiting the foregoing, it is expressly understood and acknowledged that any coverage provided to any **Insured Person** in an **Outside Directorship** shall be specifically excess of any indemnity (other than any indemnity provided by the **Organization**) or insurance available to such **Insured Person** by reason of serving in the **Outside Directorship**.

(7)    Nothing in this endorsement is intended, nor shall anything herein be construed, to increase any of the Company's Limits of Liability shown in Item 2 of the Declarations for this coverage section.

(8)    If the Company or any of its subsidiaries or affiliated companies makes payment under another policy, or under another coverage section of this policy, on account of a **Claim** that (i) is also covered under this coverage section and that (ii) is made against an **Insured Person** for his or her **Wrongful Acts** in an **Outside Directorship**, then this coverage section's Limit of Liability with respect to that **Claim** (as set forth in Item 2(A) of the Declarations for this coverage section) shall be reduced by the amount of the payment so made under such other policy or other coverage section.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: May 5, 2012

Company:  Federal Insurance Company

Endorsement No. 16

To be attached to and
form a part of Policy No. 8223-7519

Issued to:  Exide Technologies

---

### AMEND EXCLUSION 6(e) ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection 6 Exclusion (e) of this coverage section is amended to read in its entirety as follows:

(e)    based upon, arising from, or in consequence of bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion 6(e) shall not apply to:

   (i)    mental anguish or emotional distress for which a claimant seeks compensation in an employment **Claim**; or

   (ii)    a **Claim** brought or maintained derivatively on behalf of the **Organization** by one or more securityholders of the **Organization**, provided such **Claim** is brought and maintained without any active assistance or participation of, or solicitation by, any **Insured Person**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: May 5, 2012

Company: Federal Insurance Company

Endorsement No. 17

To be attached to and
form a part of Policy No. 8223-7519

Issued to: Exide Technologies

---

## AMEND DEFINITION OF INSURED PERSON ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Insured Person** as defined in Subsection 5 Definitions of this coverage section is amended to include any natural person who was, now is or shall become a/an/the controller, director of investor relations, director of human resources or risk manager of an **Organization**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: May 5, 2012

Company: Federal Insurance Company

Endorsement No. 18

To be attached to and
form a part of Policy No. 8223-7519

Issued to: Exide Technologies

---

## AMEND EXCLUSION 6(b) ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (b) of Subsection 6 Exclusions of this coverage section is amended to read in its entirety as follows:

(b)     based upon, arising from, or in consequence of any written demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: May 5, 2012

Federal Insurance Company

Endorsement/Rider No. 19

To be attached to and
form a part of Policy No. 8223-7519

Issued to:  Exide Technologies

---

## AMEND DEFINITION OF MANAGER

In consideration of the premium charged, it is agreed that the following definition is deleted in its entirety and replaced with the following:

**Manager** means any natural person who was, now is or shall become a manager, member of the Board of Managers, general partner, managing general partner or equivalent executive of an **Organization** that is a limited liability company.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative